STATE OF NORTH CAROLINA v. THOMAS ALEXANDER LOVE

No. 106

(Filed 29 December 1978)

**1. Extradition § 1— alleged violation of New York extradition statute—motion to dismiss**

The trial court properly denied defendant's motion to dismiss made on the ground that New York officials violated a New York extradition statute by detaining him in that state beyond the period provided by New York law, since the Uniform Criminal Extradition Act contains no provision requiring dismissal of an underlying indictment where technical procedures are not complied with, and the courts of North Carolina are not the place for defendant to assert his alleged rights under New York law.

2. **Constitutional Law § 53— speedy trial—thirteen months between indictment and trial—defendant fighting extradition**

Defendant was not denied his constitutional right to a speedy trial for murder by a delay of thirteen months between his indictment and trial where defendant fled the State immediately after the crime on 21 October 1976, gave himself up to New York police in January 1977, and, due to actions by his own counsel and officials of the State of New York, was not returned to this State until August 1977; counsel was appointed for him and he stood trial on 9 February 1978; defendant did not request a speedy trial; and defendant offered no evidence that the delay caused any sort of prejudice to his case.

3. **Criminal Law § 80— admission of police investigative report**

The trial court did not err in admitting a police officer's investigative report where the report contained nothing more than other evidence properly elicited at trial, nothing in the report implicated defendant, and the report amounted to evidence corroborating the officer's statements at trial.

4. **Criminal Law § 69— competency of police radio dispatches**

A proper foundation was laid for testimony by two officers concerning police radio dispatches advising them to be on the lookout for a described automobile where the first officer identified the sender and stated that he recognized the sender's voice, and the second officer identified the sender as a police dispatcher and the communication revealed that the speaker had knowledge of facts which only would be within the ken of police officials. Furthermore, testimony as to the radio dispatches was competent where it was not offered to prove the truth of the matter asserted but was offered to corroborate an officer's testimony and to impeach defendant's testimony.

5. **Criminal Law §§ 73.2, 87.4— testimony on redirect—explanation of testimony on cross-examination—no hearsay**

An officer's testimony on redirect that he did not serve a warrant on defendant in New York until a certain date because he had information that defendant had refused to waive extradition and that he would be told when he could come to New York to get defendant was not hearsay, since it was not introduced to prove the truth of the matters asserted but to prove the officer's reasons for his conduct, and was competent to explain testimony brought out by defense counsel on cross-examination of the officer.

6. **Criminal Law § 48— evidence of refusal to waive rights—incompetency— harmless error**

*Miranda v. Arizona,* 384 U.S. 436, did not render inadmissible testimony that defendant, while in custody, had refused to waive his constitutional rights where there was no evidence that a specific incriminating accusation was leveled at defendant at the time of his assertion of his rights which defendant, by his silence, might be taken to have admitted. However, the admission of evidence that defendant asserted his right to remain silent was error because the evidence lacked probative value, but such error was harmless in light of the amount of competent evidence showing defendant's guilt.

**7. Homicide § 18— premeditation and deliberation—circumstances to consider**

Among the circumstances to be considered in determining whether a killing is done with premeditation and deliberation are: (1) the want of provocation on the part of deceased; (2) the conduct of defendant before and after the killing; (3) the vicious and brutal manner of the killing; and (4) the number of blows inflicted.

**8. Homicide § 21.5— first degree murder—sufficiency of evidence**

The State's evidence was sufficient for the jury on the issue of defendant's guilt of first degree murder where it tended to show that defendant, armed with a pistol, trailed deceased for several blocks, then pulled up beside deceased's car and, without provocation, shot into the car at least two or three times, killing deceased, and that defendant then rapidly drove away and left the State of North Carolina.

**9. Criminal Law §§ 102.5, 128.2— improper question by prosecutor—motion for mistrial**

In this first degree murder prosecution, the trial court did not err in the denial of defendant's motion for mistrial when the prosecutor asked defendant whether the daughter of the woman with whom defendant had been living hadn't alleged that defendant was the father of her child where the court sustained defendant's objection and instructed the jury not to consider the prosecutor's question.

APPEAL by defendant from *Stevens, J.,* at the February 1978 Criminal Session of WILSON Superior Court.

Defendant was tried and convicted for the first degree murder of Donald Mack Crowell. From a sentence of life imprisonment he appealed.

The evidence for the State tends to show that defendant had lived with Catherine Mitchell off and on since 1970, and that they had three children. The deceased, Catherine's son by a former husband, objected to the relationship between his mother and defendant, and on one occasion, some four or five years previously, he and defendant had engaged in a fight. Since that time deceased and defendant had apparently been on good terms. Defendant and Catherine lived in Baltimore, Maryland, for a number of years, but she returned to live with her sister in Wilson. Thereafter, she and defendant were together at various times. On 21 October 1976 defendant was in Wilson, driving a new four-door burgandy car with a Maryland license plate, the number of which she noted. She and defendant for some time had quarreled over the custody of their children. On the day of the

shooting, October 26, defendant called Catherine and told her that if she wanted the children, she would have to come and get them. Since defendant had previously shown her a pistol which he carried, she was afraid to go; so, she asked him to bring the children to her. While she was talking to defendant, her son Donald, the deceased, took the phone and told defendant to leave his mother alone. He then slammed the phone down. After this telephone conversation, Catherine was riding with deceased to the bus station, when defendant, driving the four-door burgandy car, drove up beside them on a narrow, curving street. Defendant fired two or more shots into their car, killing Donald Mack Crowell. After the shooting, defendant left the State. He surrendered to officers in New York in January 1977 and was returned to North Carolina for trial on 9 August 1977.

Defendant testified in his own behalf and denied that he shot deceased or that he was in North Carolina on the date in question. He testified that he was in Virginia on that date and was driving a borrowed Mercedes Benz.

Other facts necessary to the disposition of defendant's assignments of error will be set out in the opinion.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Joan H. Byers for the State.*

*Robert A. Farris for defendant appellant.*

MOORE, Justice.

[1] Defendant first argues that the trial court erred in denying defendant's motion to dismiss. The ground for his motion was his allegation that New York officials violated a certain New York extradition statute, § 570.24 of the Criminal Procedure Laws of New York, by detaining him in that state beyond the period provided for by New York law. Defendant further argues that his detention in New York from 13 January 1977 until 9 August 1977 resulted in a violation of his constitutional right to a speedy trial.

G.S. 15A-730 of Article 37 of Chapter 15A of the General Statutes, the Uniform Criminal Extradition Act, is identical with the New York statute cited by defendant. The Uniform Act contains no provision requiring dismissal of an underlying indictment

where technical procedures are not complied with. The courts of this State are not the place for defendant to assert his alleged rights under New York law. If he felt that there had been a violation of New York law, he should have sued for his release in New York courts prior to his extradition. The reasons for his not doing so are evident from the record. While being held in New York defendant was represented by a New York attorney who worked to help defendant avoid extradition to the State of North Carolina.

[2] Defendant's allegation that he has been denied his constitutional right to a speedy trial is equally groundless. He fled the State immediately after the crime. In January 1977 he gave himself up to New York police, and an indictment was issued by the grand jury of Wilson County. He remained in custody in New York until 8 August, when he was returned to this State for trial. Counsel was appointed for him and he stood trial on 9 February 1978. Considering the factors set forth in *Barker v. Wingo*, 407 U.S. 514, 33 L.Ed. 2d 101, 92 S.Ct. 2182 (1972), and *State v. McKoy*, 294 N.C. 134, 240 S.E. 2d 383 (1978), for determining whether one's right to a speedy trial has been afforded him, it is evident that defendant was not denied his right to a speedy trial. The length of the delay between indictment and trial, thirteen months, is not inordinate, given the reasons for the delay: that defendant fled the State immediately after the crime and, due to actions by his own counsel and officials of the State of New York, was not returned to this State until August 1977. Defendant did not request a speedy trial and thus did not assert his right prior to trial. Finally, defendant has offered no evidence that the delay caused *any* sort of prejudice to his case. This assignment is therefore overruled.

[3] Under his second assignment defendant contends that the trial court erred in several instances in admitting allegedly improper evidence over defendant's objections. Defendant first contends that it was error for the court to admit into evidence the investigation report drawn up by Officer Smith shortly after the crime. A reading of the report indicates that it contains nothing more than other evidence properly elicited at trial, namely, that the victim, while accompanied by his mother, was killed by shots fired from another vehicle. Nothing in the report implicates

defendant. The report is entirely innocuous, and, technically, amounts to evidence corroborating Officer Smith's statements at trial.

**[4]** Next, defendant argues that the trial court erred in admitting testimony by Officer Moore that on the day of the crime he received from Officer Smith a radio dispatch to be on the lookout for a burgandy automobile with Maryland license plates. Defendant further argues that the court erred in admitting testimony by Deputy Gee of Lunenburg County, Virginia, that a few days after the crime he received a radio call from South Hill, Virginia, relaying a dispatch to be on the lookout for a 1976 maroon or burgandy Granada, license DHG-178. Deputy Gee said that he later spotted the car and gave chase. The driver, a black male, six feet tall, stopped the car on a dead end road and escaped. Gee said that defendant's mother lived less than five miles from this area. Defendant argues that the admission of the testimony concerning the radio dispatch was inadmissible hearsay, prejudicial to his case. We disagree.

As in the case of telephone conversations, a foundation must be laid for the admission of testimony concerning the content of the transmitted message. *See State v. Connley*, 295 N.C. 327, 245 S.E. 2d 663 (1978). *See also Everette v. Lumber Co.*, 250 N.C. 688, 110 S.E. 2d 288 (1959). The identity of the caller may be established by testimony that the witness recognized the caller's voice, or by circumstantial evidence. *State v. Williams*, 288 N.C. 680, 220 S.E. 2d 558 (1975); McCormick on Evidence, § 226 (2d ed. 1972). In instant case, both witnesses were able to identify the source of the message. Officer Moore identified the sender as Officer Smith, and said that he recognized the voice of Officer Smith. Officer Gee identified the sender as a dispatcher in South Hill, Virginia. Though he did not testify that he was familiar with the sender's voice, the communication received reveals that the speaker had knowledge of facts which only would be within the ken of police officials. *Cf. United States v. LoBue*, 180 F. Supp. 955 (S.D.N.Y. 1960).

The foundation for this testimony having been laid, its admissibility depends on a further showing that it was not offered to prove the truth of the matter asserted, or else comes within some exception to the hearsay rule. In *State v. Connley, supra*,

this Court held that police radio transmissions are admissible as substantive evidence by analogy with the exception to the hearsay rule permitting evidence of written entries made in the regular course of business. *See also* McCormick on Evidence, § 307 (2d ed. 1972). *Cf. State v. Cawthorne*, 290 N.C. 639, 227 S.E. 2d 528 (1976). The *Connley* rule is not, however, needed to justify the admission of the testimony in this case, for such testimony was not offered to prove the truth of the matter asserted.

Testimony by Officer Moore concerning the message he received from Officer Smith was not offered for hearsay purposes, but was offered for the purpose of corroborating Officer Smith's testimony that he put on the radio a description of the vehicle involved in the crime, said description being taken from Mrs. Mitchell. Since Officer Smith did not testify regarding what that description was, Officer Moore's testimony is not directly corroborative, and its admission was therefore technically erroneous. However, such error was harmless since both eyewitnesses to the crime testified that the fleeing automobile involved in the crime was a maroon or burgandy Ford Granada.

Deputy Gee's testimony regarding the radio message was likewise not offered for substantive purposes, but was offered to impeach defendant's testimony that he went to Baltimore on October 26, stayed there a week, and then went to New York. Testimony by Officer Gee concerning the radio message was offered to prove his motive for giving chase to a car identical to that involved in the crime. Though the automobile involved did not belong to defendant, said testimony of the chase and the radio message providing reason for the chase was admissible for impeachment purposes since defendant testified that he did not have possession of the car, and it was shown that defendant's mother lived within five miles of the spot where the car was abandoned. This assignment is therefore without merit.

[5] Under this same assignment defendant argues that the trial court erred in allowing Officer Moore to testify on redirect examination that the reason he did not serve a warrant on defendant in New York until 8 August 1977 was that he had information from New York that the defendant had refused to waive extradition, and that the officer would be told when he could come to New York to get the defendant. Defendant insists that such

testimony was inadmissible hearsay, that the testimony forced the defendant to take the stand to explain the circumstances of his extradition, and that the testimony was offered solely to prejudice the jury against defendant. This assignment is manifestly without merit, for prior to the testimony, on cross-examination of the witness, defense counsel put to the same witness the following questions:

"Q. You say that you did not serve the warrant until August 8, 1977?

A. That's right.

Q. But, you knew as soon as the defendant found you were looking for him that he went to the police station in New York City and you were advised of that fact, weren't you, that was in January?

A. I have information relating to that."

It is obvious that on redirect examination the witness was simply called upon to more fully explain that which defense counsel had willingly brought out on cross-examination. On redirect examination a party may re-examine his witness in order to remove any obscurity or uncertainty that may have been caused by the cross-examination. "The object is to clarify the subject matter of the direct examination and new matter elicited on cross-examination. . . ." 1 Stansbury, N.C. Evidence, § 36 (Brandis rev. 1973). And, evidence explanatory of testimony brought out on cross-examination is admissible on redirect although it might not have been proper in the first instance. *Johnson v. Massengill*, 280 N.C. 376, 186 S.E. 2d 168 (1972); *State v. Warren*, 227 N.C. 380, 42 S.E. 2d 350 (1947); *State v. Orrell*, 75 N.C. 317 (1876). As for defendant's argument that the same testimony is inadmissible hearsay, this is also without merit. The testimony was not introduced to prove the truth of the matters asserted, but to prove the officer's reasons for his subsequent conduct, a matter put in issue by defendant on cross-examination. *See State v. Dilliard*, 223 N.C. 446, 27 S.E. 2d 85 (1943).

[6] Defendant's final argument under this assignment is that the trial court erred in allowing the State to introduce evidence that the defendant, while in custody, had refused to waive the constitutional rights set forth in *Miranda v. Arizona*, 384 U.S. 436, 16

L.Ed. 2d 694, 86 S.Ct. 1602 (1966). Defendant contends that such evidence was used by the prosecution solely to prejudice the defendant. He argues, correctly, that whenever an accused has been taken into custody and officers are present, evidence of an admission by silence is banned, at least as substantive evidence. *See* 2 Stansbury, N.C. Evidence, § 179, p. 54 (Brandis rev. 1973). In *Miranda v. Arizona, supra,* 384 U.S. 468, n. 37, the Court said: "[I]t is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege *in the face of accusation.*" (Emphasis added.) This Court has held accordingly on various occasions. *See State v. Castor,* 285 N.C. 286, 204 S.E. 2d 848 (1974); *State v. Fuller,* 270 N.C. 710, 155 S.E. 2d 286 (1967). *See also State v. McCall,* 286 N.C. 472, 212 S.E. 2d 132 (1975).

A look at the facts of this case reveals, however, that the above cited cases are inapplicable. Officer Moore's testimony regarding defendant's refusal to waive his rights was given in the course of other testimony concerning a prior inconsistent statement made by defendant. There was no evidence that a specific incriminating accusation was leveled at defendant at the time of his assertion of his rights. Where, as here, there is evidence that defendant simply asserted his rights, but no evidence that he remained silent (because he had asserted his rights) in the face of a specific incriminating accusation, the *Miranda* rule does not apply, for there has been no accusation made which the defendant, by his silence, might be taken to have admitted. *See State v. Williams,* 288 N.C. 680, 220 S.E. 2d 558 (1975).

Admission of this testimony was, nonetheless, error. As the United States Supreme Court held in *United States v. Hale,* 422 U.S. 171, 45 L.Ed. 2d 99, 95 S.Ct. 2133 (1975), and as this Court held in *State v. Williams, supra,* where a defendant testifies in a criminal case, impeachment evidence that, while in custody, he made no statement about the events which transpired at the time of the crime is inadmissible, for it is not sufficiently probative of an inconsistency with his in-court testimony to warrant admission. Therefore, we hold that admission of evidence that a defendant asserted his rights to remain silent is error due to such evidence's lack of probative value. However, though it was error for the trial court to permit Officer Moore to testify concerning

defendant's assertion of his constitutional rights, this impeachment evidence was of such insignificant import when compared with the competent evidence showing defendant's guilt that its admission was harmless. *See State v. Williams, supra.* This assignment is overruled.

[7] Defendant next alleges that the trial judge erred in overruling his motion for nonsuit in that the State failed to show malice, premeditation and deliberation. Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. *State v. Hill,* 294 N.C. 320, 240 S.E. 2d 794 (1978); *State v. Davis,* 289 N.C. 500, 223 S.E. 2d 296 (1976); *State v. Duboise,* 279 N.C. 73, 181 S.E. 2d 393 (1971). Malice is defined as ". . . not only hatred, ill-will, or spite, as it is ordinarily understood—to be sure that is malice—but it also means that condition of mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification. [Citation omitted.]" *State v. Benson,* 183 N.C. 795, 799, 111 S.E. 869, 871 (1922). *See State v. Constance,* 293 N.C. 581, 238 S.E. 2d 294 (1977); *State v. Moore,* 275 N.C. 198, 166 S.E. 2d 652 (1969). Premeditation may be defined as thought before hand for some length of time. "Deliberation means . . . an intention to kill, executed by the defendant in a cool state of blood, in furtherance of a fixed design . . . or to accomplish some unlawful purpose. . . ." *State v. Benson, supra. See State v. Hill,* supra; *State v. Faust,* 254 N.C. 101, 118 S.E. 2d 769 (1961). Ordinarily, premeditation and deliberation are not susceptible of proof by direct evidence, and therefore must usually be proved by circumstantial evidence. Among the circumstances to be considered in determining whether a killing is done with premeditation and deliberation are: (1) the want of provocation on the part of deceased; (2) the conduct of defendant before and after the killing; (3) the vicious and brutal manner of the killing; and (4) the number of blows inflicted. *State v. Hill, supra; State v. Sparks,* 285 N.C. 631, 207 S.E. 2d 712 (1974); *State v. Perry,* 276 N.C. 339, 172 S.E. 2d 541 (1970).

Where, as here, there is a motion for judgment as of nonsuit, the evidence is to be considered in the light most favorable to the State and the State is entitled to every reasonable inference of fact deducible from the evidence. *State v. Hill, supra; State v. McKinney,* 288 N.C. 113, 215 S.E. 2d 578 (1975); *State v. McNeil,* 280 N.C. 159, 185 S.E. 2d 156 (1971). If there is substantial

evidence, whether direct, circumstantial, or both, to support a finding that the offense charged has been committed and that defendant committed it, a case for the jury is made out and nonsuit should be denied. *State v. Hill, supra; State v. McKinney, supra; State v. Cook,* 273 N.C. 377, 160 S.E. 2d 49 (1968).

[8] In present case there is evidence that tends to show that defendant, armed with a pistol, trailed deceased for several blocks, then pulled up beside him and, without provocation, shot into the car at least two or three times, killing deceased. Then, without stopping, defendant rapidly drove away and left the State of North Carolina. In our opinion, when taken in the light most favorable to the State, this evidence was sufficient to permit the jury to reasonably infer that defendant, with malice, after premeditation and deliberation, formed a fixed purpose to kill the deceased and thereafter accomplished that purpose. We hold, therefore, that the State's evidence was sufficient to be submitted to the jury on the charge of first degree murder. *See State v. Hill, supra; State v. Perry, supra; State v. Faust, supra.*

[9] Defendant next insists that the court erred in denying defendant's motion for a mistrial. This motion was based on the following incident which occurred during the trial: On cross-examination defendant testified that Evon Crowell, Catherine's daughter, lived in the house with them, became pregnant and had a son named Michael. The prosecutor then asked: "And didn't Evon allege that that was your child?" Counsel for defendant objected and moved to strike, and for a mistrial. The court stated: "Well, the motion is allowed to strike. Do not consider any of that, ladies and gentlemen of the jury." Defendant contends, however, that by the question the prosecutor accused defendant of fathering a child by a young woman who, for all practical purposes, was his stepdaughter, that there was no basis in the evidence for this question and that defendant was thereby effectively denied a fair trial.

Motions for a mistrial in non-capital cases are addressed to the discretion of the trial judge and his ruling thereon will not be disturbed absent a showing of gross abuse of discretion. *State v. McLean,* 294 N.C. 623, 242 S.E. 2d 814 (1978); *State v. Daye,* 281 N.C. 592, 189 S.E. 2d 481 (1972). [Note: For statutes relative to mistrial effective 1 July 1978, *see* G.S. 15A-1061-1065.]

Carroll v. Industries, Inc.

In *State v. Self*, 280 N.C. 665, 187 S.E. 2d 93 (1972), defendant was asked an improper question. Defendant objected and the objection was sustained. Defendant then moved to strike and the court instructed the jury not to consider the question. Counsel for defendant argued that a mistrial should have been granted on grounds that the question was highly prejudicial and improper insofar as the question left an impression on the jury which could not be erased by the court's instruction. In that case we held "that the court's prompt action in sustaining defendant's objection to the question . . . coupled with the court's specific instruction to the jury not to consider the question but to strike it from their mind, was sufficient to remove any possibility of error."

In *State v. Moore*, 276 N.C. 142, 149, 171 S.E. 2d 453, 458 (1970), Justice Sharp (now Chief Justice), quoted with approval from *State v. Ray*, 212 N.C. 725, 729, 194 S.E. 482, 484 (1938):

" '[O]ur system for the administration of justice through trial by jury is based upon the assumption that the trial jurors are men of character and of sufficient intelligence to fully understand and comply with the instructions of the court, and are presumed to have done so. *Wilson v. Mfg. Co.*, 120 N.C. 94, 26 S.E. 629.' "

The record in present case shows no abuse of discretion by the trial court. Consequently, this assignment is without merit.

After a full and careful review of the record, we conclude that defendant has had a trial free from prejudicial error.

No error.