STATE OF NORTH CAROLINA v. ARTHUR MARTIN VAUSE, JR.

No. 275A90

(Filed 7 February 1991)

**1. Criminal Law § 616 (NCI4th) — motion to dismiss — substantial evidence test**

When a defendant moves for dismissal in a criminal case, the trial court is to determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. It is not the rule in this jurisdiction that the trial court is required to determine that the evidence excludes every reasonable

STATE v. VAUSE

[328 N.C. 231 (1991)]

hypothesis of innocence before denying a defendant's motion to dismiss.

**Am Jur 2d, Criminal Law § 512.**

2. **Criminal Law § 621 (NCI4th)— motion to dismiss—circumstantial evidence**

The test of the sufficiency of the evidence to withstand the defendant's motion to dismiss is the same whether the evidence is direct, circumstantial, or both. Therefore, if a motion to dismiss calls into question the sufficiency of circumstantial evidence, the issue for the court is whether a reasonable inference of the defendant's guilt may be drawn from the circumstances.

**Am Jur 2d, Criminal Law § 512; Evidence §§ 1125, 1126.**

3. **Homicide § 4.3 (NCI3d)— premeditation, deliberation and intent to kill—effect of passion**

One may deliberate, may premeditate and may intend to kill after premeditation and deliberation although prompted and to a large extent controlled by passion at the time.

**Am Jur 2d, Homicide §§ 52, 53.**

4. **Homicide § 21.5 (NCI3d)— premeditation and deliberation—intent to kill—sufficiency of evidence**

Evidence tending to show that defendant stabbed the female victim at least thirty-nine times after she had been shoved to a couch in her home by defendant and that defendant stabbed her with sufficient force to bend the first knife he used before he picked up a second knife to complete his murderous attack would permit reasonable findings that the killing was especially brutal and that the defendant struck many of the deadly blows after the victim had been felled and rendered helpless, and such evidence, standing alone, was substantial evidence tending to show premeditation and deliberation. Further, substantial evidence tending to show premeditation and deliberation was also substantial evidence of intent to kill.

**Am Jur 2d, Homicide § 439.**

**5. Homicide § 25.2 (NCI3d)— intent to kill, premeditation and deliberation—mental capacity—instructions sufficient**

Pattern jury instructions given by the trial court in a first degree murder case included the substance of defendant's requested instructions on intent to kill, premeditation and deliberation, and the court's instructions on mental capacity to form a specific intent or to premeditate or deliberate also included the substance of instructions requested by defendant. Therefore, the trial court did not err in declining to give defendant's requested instructions.

**Am Jur 2d, Homicide § 497.**

APPEAL by the defendant as a matter of right, pursuant to N.C.G.S. § 7A-27(a), from a judgment sentencing him to life imprisonment entered by *Freeman, J.,* on 13 February 1990, in Superior Court, GUILFORD County. Heard in the Supreme Court on 12 November 1990.

*Lacy H. Thornburg, Attorney General, by David F. Hoke, Assistant Attorney General, for the State.*

*H. Davis North III and A. Wayland Cook for the defendant-appellant.*

MITCHELL, Justice.

The defendant Arthur Martin Vause, Jr. was tried upon a proper bill of indictment charging him with murder. A jury found the defendant guilty of first degree murder. After a capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the same jury recommended a sentence of life imprisonment. The trial court entered judgment sentencing the defendant to life imprisonment, and the defendant appealed to this Court as a matter of right.

The defendant argues on appeal that the trial court erred by denying his motion to dismiss the first degree murder charge against him and by refusing to give certain jury instructions he requested. We find no error.

The State's evidence tended to show that the defendant Vause and Lori Lewis were living together in an apartment in Lexington in 1988. The defendant was fired from his job, and the couple eventually had to leave the apartment because they had no money to pay the rent.

**STATE v. VAUSE**

[328 N.C. 231 (1991)]

In late August or early September of 1988, the defendant called his stepmother, Nancy Cook, in Greensboro. She told him that she could not lend him any money but that he and Lewis could live with her until he found a job and could pay his bills. The defendant and Lori Lewis moved in with Nancy Cook who was friendly, bought them food and made them feel welcome. After a week, Cook told Lori Lewis that she and the defendant would have to leave because they "were getting on her nerves and she couldn't handle it." When the defendant came home, Lewis told him what Cook had said. The defendant talked to Cook, and she said that the defendant and Lewis had to leave as soon as possible. However, Cook allowed the couple to spend that night in her home.

Sometime the next day, the defendant and Cook began arguing about the couple still being there, and she pushed the defendant. The defendant then pushed Cook down on a couch, grabbed a knife from an end table beside the couch and began stabbing her. When the knife bent, he threw it down, picked up another knife from the end table and continued stabbing Cook. Cook was screaming, and the defendant put his hand over her mouth to stop her screaming. She managed to yell that he was killing her and called out for Lori Lewis to help her. The defendant then got on top of Cook and continued stabbing her in her chest and neck.

After the defendant finished stabbing Cook, he sat down on the couch for a couple of minutes. He then got up, took off his clothes and rinsed off in the shower. He told Lewis to put the clothes that he had been wearing in a garbage bag and to get some other clothes together for them to wear and put them in garbage bags. The defendant then had Lewis help him drag Cook into a bedroom where he wrapped Cook in a blanket and left her beside the bed. The defendant took about $300.00 from Cook's pocketbook. He gathered the garbage bags containing the clothes, closed the blinds and locked the apartment. The defendant then drove away with Lewis in Cook's car.

The defendant told Lewis they were going to Canada. They drove through Virginia and West Virginia, where he disposed of the garbage bag containing the clothes he had worn when he stabbed Cook. The defendant and Lewis then proceeded to Pennsylvania, where they registered under a false name and spent the night. The next day they went to New York where they stayed for several days. Lewis testified that the defendant "was always looking out

the window, [to] make sure, you know, there wasn't any cops around." The defendant and Lewis later went to Niagara Falls where they stayed for two or three days. Lewis did not want to go to Canada, so she told the defendant that he could not enter Canada without a passport. The defendant and Lewis then started to Detroit, but they ran out of money. In Ohio, the car ran out of gas and they stopped on the side of the road. A state trooper gave them a ride to a toll booth for the defendant to call a garage, after the defendant told the trooper that the car had broken down. After the trooper left, the defendant and Lewis spent the night in the woods beside the toll booth. The next day, Lewis convinced the defendant that they should turn themselves in to the police. They went to a nearby gas station and called the local police. Shortly thereafter, police officers took the defendant and Lewis into custody.

On 8 September 1988, Officer Terry Scott of the Greensboro Police Department entered the residence of Nancy Cook. He found Cook's decomposing body covered with a blanket in a bedroom. He picked up the blanket and immediately noticed that the body bore a large gash in the throat and puncture wounds in the chest. He concluded that the death had not been by natural causes and immediately secured the crime scene.

Gloria Pettiford testified that she lived in the same apartment complex as Nancy Cook, and they shared the same front entrance. On 5 September 1988, Pettiford arrived home and could hear screaming coming from within Cook's apartment. She heard a female voice say, "Oh, God, why are you doing this to me?" The screaming then started again and continued until Pettiford saw "two kids getting into a blue station wagon and they left." One was male and the other female.

Dr. Thomas Clark, a forensic pathologist, performed an autopsy on the body of Nancy Cook on 9 September 1988. The body contained multiple stab wounds on the neck, chest, both arms and the right hand. In Dr. Clark's opinion, the stab wounds were inflicted prior to death and were the cause of death. An examination of the body revealed six stab wounds to the front of the neck and twenty-four stab wounds to the left side of the chest. Several of the chest wounds went into the chest cavity and came in contact with the heart; one punctured the heart, and one punctured the left lung. Eight "defense wounds" found on the arms of the body were consistent with the victim having raised an arm in a protec-

tive stance or raised the palm to try to grab a knife while being attacked. A total of at least thirty-nine discrete stab wounds were inflicted upon Cook. Dr. Clark testified that, because "[s]ome of the wounds had more than one track, indicating that the knife was withdrawn and inserted again through the same skin opening," Cook could have been stabbed more than thirty-nine times.

The defendant introduced the testimony of only one witness, Dr. Billy Royal, a forensic psychiatrist. Dr. Royal testified that in his opinion the defendant was emotionally and mentally disturbed and did not have the capacity to make and carry out plans or to form the intent to kill at the time he killed Nancy Cook. Dr. Royal also was allowed to testify, over objection by the State, that the defendant did not have the capacity to premeditate and deliberate at the time of the murder. Dr. Royal testified further that, in his opinion, the defendant

> had been under significant pressure, was very depressed, and somewhat frantic in terms of what was happening to him. Even so, he was still confident and responsible in the usual sense, until seconds prior to the murder in which all the things that had happened to him then resulted in his "snapping" and becoming temporarily psychotic and not in control of his functions.

The defendant first assigns as error the trial court's denial of his motion to dismiss the first degree murder charge against him at the close of all of the evidence. In support of this assignment, the defendant contends that no substantial evidence was introduced tending to show that he killed the victim intentionally after premeditation and deliberation.

[1] When a defendant moves for dismissal, the trial court is to determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). Whether evidence presented constitutes substantial evidence is a question of law for the court. *Id.* at 66, 296 S.E.2d at 652. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). The term "substantial evidence" simply means "that the evidence must be existing and real, not just seeming or imaginary." *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980).

The trial court's function is to determine whether the evidence will permit *a reasonable inference* that the defendant is guilty of the crimes charged. *Earnhardt*, 307 N.C. at 67, 296 S.E.2d at 652. "In so doing the trial court should only be concerned that the evidence is sufficient to get the case to the jury; it should not be concerned with the weight of the evidence." *Id.* It is *not* the rule in this jurisdiction that the trial court is required to determine that the evidence excludes every reasonable hypothesis of innocence before denying a defendant's motion to dismiss. *Powell*, 299 N.C. at 101, 261 S.E.2d at 118; *State v. Stephens*, 244 N.C. 380, 383-84, 93 S.E.2d 431, 433 (1956).

[2] In ruling on a motion to dismiss:

> The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion.

*Powell*, 299 N.C. at 99, 261 S.E.2d at 117. The test of the sufficiency of the evidence to withstand the defendant's motion to dismiss is the same whether the evidence is direct, circumstantial, or both. Therefore, if a motion to dismiss calls into question the sufficiency of circumstantial evidence, the issue for the court is whether a reasonable inference of the defendant's guilt may be drawn from the circumstances. *Id.*

In applying the foregoing rules to a motion to dismiss a first degree murder prosecution, the trial court must determine whether the evidence, viewed in the light most favorable to the State, is sufficient to permit a jury to make a reasonable inference and finding that the defendant, after premeditation and deliberation, formed and executed a fixed purpose to kill. *State v. Walters*, 275 N.C. 615, 623, 170 S.E.2d 484, 490 (1969). The defendant in the present case specifically argues that no substantial evidence was introduced at trial to support a reasonable inference or finding that he killed the victim intentionally or with premeditation and deliberation. Instead, he argues that all of the evidence tends to show that he acted as a result of passion and emotion arising from his argument with the victim.

**[3]** "First degree murder is the unlawful killing of a human being with malice, premeditation and deliberation." *State v. Misenheimer*, 304 N.C. 108, 113, 282 S.E.2d 791, 795 (1981). Premeditation and deliberation generally must be established by circumstantial evidence, because they ordinarily " 'are not susceptible to proof by direct evidence.' " *Id.* (quoting *State v. Love*, 296 N.C. 194, 203, 250 S.E.2d 220, 226-27 (1978) ). "Premeditation" means that the defendant formed the specific intent to kill the victim some period of time, however short, before the actual killing. *Id.* "Deliberation" means that the intent to kill was formed while the defendant was in a cool state of blood and not under the influence of a violent passion suddenly aroused by sufficient provocation. *Id.* In the context of determining the existence of deliberation, however, the term "cool state of blood" does not mean " 'an absence of passion and emotion.' " *Id.* (quoting *State v. Faust*, 254 N.C. 101, 108, 118 S.E.2d 769, 773, *cert. denied*, 308 U.S. 851, 7 L. Ed. 2d 49 (1961) ). One may deliberate, may premeditate, and may intend to kill after premeditation and deliberation, although prompted and to a large extent controlled by passion at the time. *Id.*

The defendant in the present case argues that the evidence introduced at his trial would support no reasonable finding other than that he acted under the influence of a violent passion suddenly aroused by sufficient provocation. Therefore, he contends that there was no substantial evidence tending to show that his action in killing Cook was intentional, premeditated or deliberate. We do not agree.

Premeditation and deliberation are processes of the mind. In most cases, they are not subject to proof by direct evidence but must be proved, if at all, by circumstantial evidence. Among other circumstances from which premeditation and deliberation may be inferred are (1) lack of provocation on the part of the deceased, (2) the conduct and statements of the defendant before and after the killing, (3) threats and declarations of the defendant before and during the occurrence giving rise to the death of the deceased, (4) ill-will or previous difficulty between the parties, (5) the dealing of lethal blows after the deceased has been felled and rendered helpless, (6) evidence that the killing was done in a brutal manner, and (7) the nature and number of the victim's wounds. *State v. Gladden*, 315 N.C. 398, 430-31, 340 S.E.2d 673, 693 (1986).

[4] In the present case, there was evidence tending to show that the defendant stabbed his victim no less than thirty-nine times. He stabbed her repeatedly with sufficient force to bend the first knife he used before he picked up a second knife to complete his murderous attack. The number of stab wounds inflicted upon the female victim after she had been shoved to a couch in her home by the defendant would permit a reasonable finding that the killing was especially brutal and that the defendant struck many of the deadly blows after the victim had been felled and rendered helpless. Such evidence, standing alone, was substantial evidence tending to show premeditation and deliberation. *See State v. Bock*, 288 N.C. 145, 217 S.E.2d 513 (1975), *death sentence vacated*, 428 U.S. 903, 49 L. Ed. 2d 1209 (1976). The trial court did not err in concluding that there was substantial evidence tending to show that the defendant killed the victim after premeditation and deliberation. Further, substantial evidence tending to show premeditation and deliberation is also substantial evidence of intent to kill. *State v. Jones*, 303 N.C. 500, 505, 279 S.E.2d 835, 839 (1981). Therefore, the trial court did not err in denying the defendant's motion to dismiss, and this assignment of error is without merit.

[5] The defendant next assigns as error the trial court's refusal to give certain instructions on first degree murder as requested by the defendant. The trial court gave the appropriate pattern jury instructions, in their entirety, on the elements of first degree murder. With regard to the elements of intent to kill, premeditation and deliberation, the defendant requested additional instructions which he now contends would have elaborated on and clarified the language used in the pattern jury instructions. "Neither statutory nor case law requires that the trial court's charge be given exactly in the words of the tendered request for instructions. It is sufficient if the trial court gives the requested instructions in substance." *State v. Avery*, 315 N.C. 1, 33, 337 S.E.2d 786, 804 (1985). It suffices here to say that the pattern instructions given by the trial court included the substance of the requested instructions, and that the trial court did not err in declining to give the requested instructions. This assignment is without merit.

By his next assignment of error, the defendant contends that the trial court erred by failing to give certain special instructions the defendant requested concerning his mental capacity. In his brief, the defendant has failed to specifically identify or refer us to any portions of the trial court's instructions on mental capacity

which he now contends were inadequate or erroneous. *See* N.C.R. App. P. 10(c)(2) and 28(b)(5). Having reviewed the requested instructions and compared them with the instructions on mental capacity to form a specific intent or to premeditate or deliberate as actually given by the trial court, we conclude that the instructions given included the substance of the requested instructions. In fact, the instructions given appear to include the requested instructions almost verbatim. This assignment is without merit.

The defendant received a fair trial free. of prejudicial error.

No error.