STATE OF NORTH CAROLINA v. CLARENCE GILLIS

No. COA02-638

(Filed 20 May 2003)

**1. Homicide— first-degree murder—indictment—failure to include all elements**

The argument that a first-degree murder conviction must be vacated because the indictment failed to list all of the elements of first-degree murder has been rejected by the North Carolina Supreme Court.

**2. Appeal and Error— certified record—binding—voluntariness of statement**

The Court of Appeals is bound by a certified record. Although arguments from both the State and defendant assumed that defendant said that he would not speak with investigators, testimony from officers indicates that defendant chose to make a statement rather than to remain silent. The challenged testimony does not constitute an improper comment on defendant's exercise of his rights; moreover, even if the transcript were as defendant contends, the challenged testimony would not constitute plain error in light of the overwhelming evidence of defendant's guilt.

**3. Robbery— attempted—sufficiency of evidence**

There was sufficient evidence of attempted armed robbery where evidence was presented of defendant's intent to rob the victim and of overt acts in furtherance of his goal.

**4. Homicide— felony murder—connection between robbery and killing**

There was sufficient evidence of a connection between a homicide and an attempted armed robbery to support a felony murder conviction. Defendant intended to commit armed robbery, followed the victim armed with a sawed-off shotgun, and shot and killed the victim within the next two minutes.

**5. Homicide— felony murder—judgment on underlying felony—arrested**

Judgment was arrested on a conviction for attempted armed robbery which served as the underlying felony for felony murder.

**6. Homicide— self-defense—no instruction—evidence not sufficient**

There was no plain error in not instructing the jury on self-defense where no evidence was presented that defendant had formed a belief that he was in imminent danger of great bodily harm or that he acted in self-defense when he followed the victim outside and shot him with a sawed-off shotgun. Moreover, self-defense is largely unavailable when a defendant is convicted of felony murder.

STATE v. GILLIS

[158 N.C. App. 48 (2003)]

Appeal by defendant from judgment entered 25 October 2001 by Judge Clifton W. Everett, Jr., in Cumberland County Superior Court. Heard in the Court of Appeals 12 March 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Diana A. Reeves, for the State.*

*William D. Spence, for defendant-appellant.*

LEVINSON, Judge.

Defendant (Clarence Gillis) appeals from convictions of first degree murder and attempted armed robbery. For the reasons discussed below, we find no error in the murder conviction, and arrest judgment on the conviction of attempted armed robbery.

In the early morning hours of 24 January 1998, Edgardo Rivera-Dones (the victim) died from a single gunshot to the abdomen. He was shot in front of a house located at 1101 North Street Extension, a residential neighborhood in Fayetteville, North Carolina. Witnesses identified defendant as the person who shot the victim, and after investigation defendant was arrested and charged with attempted armed robbery and first degree murder. Before trial, the case was determined to be non-capital.

At trial, the defendant did not present evidence. The State's evidence tended to show, in relevant part, the following: Marvin Brookins testified that in January of 1998, he was selling cocaine, using as his base of operations the 1101 North Street home of Frank McKimmon. Brookins testified that McKimmon allowed various people to sell cocaine from his house, including the defendant. On the night of 23 January 1998, Brookins, the defendant, and several others were all selling cocaine at the North Street house. The victim came to the house repeatedly that night, and bought "a substantial amount of cocaine." Following one of these visits, the defendant announced that "[t]he next time that the guy came to buy some [cocaine], that he was going to rob him." Defendant then retrieved his sawed off shotgun and concealed it in his coat, repeating that he would rob the man if he came back. In the early morning hours of 24 January, the victim returned to buy more cocaine. Brookins testified that when the victim left the house, the defendant followed him off the porch and started walking behind him. He saw defendant pull out his gun and speak to the victim, whereupon the victim turned around and brandished a small knife, asking defendant if he was trying to rob him. The defendant "jumped back" when he saw the knife, and the victim continued

walking towards his car. Before reaching his car, the victim, still holding a knife, turned around again and swore at the defendant. The defendant again "jumped back." However, the third time the victim turned around, the defendant cursed at the victim before shooting him at point blank range. The victim dropped to the ground immediately. Defendant spoke briefly with Brookins, telling him several times that he had "kill[ed] a ni—r," before fleeing into the nearby woods.

Brookins' testimony was corroborated in part by that of neighbors who were nearby when the shooting occurred, including Diedre Shepherd who lived with McKimmon at 1101 North Street, and Burnis and Dorothy Floyd, who lived next door. These three witnesses all testified generally that the defendant lived with McKimmon and sold cocaine from the house; that the victim came to the house repeatedly on 23 January to buy cocaine, some of which he bought from defendant; that defendant often carried a sawed off shotgun; and that on 23 January 1998, the victim and defendant were angry at each other about cocaine sales. Specifically, Burnis Floyd testified that the defendant was "always armed" with his "sawed off" shotgun. On 23 January 1998, defendant became very angry when the victim bought cocaine from Floyd, instead of buying exclusively from the defendant. Floyd heard defendant yelling at the victim not to return or "something [was] going to happen to him." When the victim came back to buy more cocaine, Floyd went inside because he thought "that the guy was getting ready to get robbed." A few minutes later he heard a gunshot. When he looked outside, he saw defendant standing over the victim. Floyd also testified that he had previously seen defendant rob six to eight different drug buyers; had seen defendant hit people with his gun; and that defendant had previously "pulled his shotgun on [Floyd]."

Floyd's wife, Dorothy, testified that she heard defendant curse the victim several times on 23 January, saying "you better not let me catch you back over here." After this, she saw defendant get his gun, which he had "every time [she saw] him," from his "usual" hiding place under the house. Later on, the victim returned to the house, and Dorothy went inside to watch from the window. She heard defendant yelling at the victim, and turned away to summon her husband. When she heard a shot, Dorothy returned to the window where she saw defendant turning and walking away from the victim. The victim was lying on the ground, and the defendant was the only person nearby.

Diedre Shepherd testified that she was living with McKimmon and selling cocaine in January, 1998. On 23 January, the defendant was high on cocaine and was "intimidating" their customers. He always carried his gun, and that night he was using it to threaten people who came to the neighborhood to buy cocaine. In addition, he cheated several people, including the victim, by selling them soap instead of cocaine. The victim was angry at being deceived, so Shepherd left to obtain some genuine cocaine from her supplier, who was a few blocks away. On her way back to North Street, she heard a gunshot and the sounds of an ambulance and police sirens. Shortly thereafter, she saw defendant running down the street smashing in car windows with the shotgun.

Other evidence also tended to corroborate Brookins' eyewitness testimony. Betty Crane, a vice president of the Fort Bragg Credit Union, testified that the bank's records indicated that on the night of 23 January 1998, the victim made numerous withdrawals, totaling almost $500.00, from ATM machines. Dr. John Butts, the State's chief medical examiner, testified that the victim appeared to have died from a single wound inflicted by a shotgun, from a distance of approximately a yard away. Officer Britton, an investigator with the Fayetteville Police Department, testified that when he arrived at the scene of the shooting, the victim was lying face down with a gunshot wound to the abdomen. All the witnesses in the area identified defendant as the shooter, and Dorothy Floyd picked defendant's picture from a photo lineup. Officer Murphy, another investigator with the Fayetteville Police Department, testified that the victim, who was already dead when Murphy arrived, "appeared to have been shot at close range with the intestines actually protruding through the wound." On 26 January 1998, Murphy arrested defendant. After being advised of his *Miranda* rights, defendant gave a written and verbal statement, denying any part in the shooting. In his statement, defendant claimed to have spent the night with a friend, Ronnie Owens. However, Owens testified that he had not seen defendant on the night of the shooting.

Following trial, defendant was convicted of attempted armed robbery, and first degree murder on the theory of felony murder. From these convictions, defendant appeals.

I.

[1] Defendant argues first that his conviction must be vacated on the grounds that "the murder indictment failed to allege all the elements"

of first degree murder. However, as defendant acknowledges, the North Carolina Supreme Court has previously rejected defendant's argument. *See, e.g., State v. Wallace,* 351 N.C. 481, 528 S.E.2d 326 (2000). This Court is bound by precedent of the North Carolina Supreme Court. *See Forsyth Memorial Hospital v. Chisholm,* 342 N.C. 616, 620, 467 S.E.2d 88, 90 (1996) (where North Carolina Supreme Court had "not had occasion to reconsider" relevant issue since 1858, "the Court of Appeals . . . was required to . . . follow[] the precedent established by this Court . . . more than a century earlier"); *Calloway v. Memorial Mission Hosp.,* 137 N.C. App. 480, 482, 528 S.E.2d 397, 399 (2000) (noting that this Court is "bound by decisions of our Supreme Court . . . [u]ntil either that body or the General Assembly acts"). Accordingly, this assignment of error is overruled.

II.

**[2]** Defendant argues next that the trial court committed plain error by "permitting the district attorney to elicit testimony commenting on defendant's exercise of his rights to remain silent and to have counsel."

Preliminarily, we review the standard for a finding of 'plain error.' The general rule is that "to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make[.]" N.C.R. App. P. 10(b)(1). However, "[i]n criminal cases a question which was not preserved by objection noted at trial and which is not deemed preserved by rule or law without any such action, nevertheless may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(c)(4). Regarding plain error, our appellate courts consistently have held that:

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or . . . has 'resulted in a miscarriage of justice or . . . where it can be fairly said 'the . . . mistake had a probable impact on the jury's finding that the defendant was guilty.'

*State v. Scott*, 343 N.C. 313, 339, 471 S.E.2d 605, 620-21 (1996) (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)). Thus, "to prevail under a plain error analysis, a defendant must show: (1) there was error; and (2) without this error, the jury would probably have reached a different verdict." *State v. Smith*, 152 N.C. App. 29, 37-38, 566 S.E.2d 793, 799, *cert. denied*, 356 N.C. 311, 571 S.E.2d 208 (2002) (citing *State v. Faison*, 330 N.C. 347, 361, 411 S.E.2d 143, 151 (1991)).

In the case *sub judice*, we find no support in the record for defendant's underlying premise, that the prosecutor elicited evidence regarding defendant's post-arrest invocation of his Fifth Amendment right to remain silent. Defendant cites the testimony of Officer Britton in support of this contention. However, a review of the cited transcript selection shows that it reads as follows:

PROSECUTOR: And can you describe what—if you would, what rights that were read to him?

OFFICER BRITTON: Yes, I can. Number one, advised him that he had the right to remain silent. Number two said that anything he said can and will be used against you in court. Then there's a question asking the individual who's been read the rights, 'Do you understand these rights?' And Mr. Gillis initialed 'CG' which indicates that he did understand the rights.

Next he was asked did he want to speak to me. He again initialed 'CG.' And then number three, we advised him that he had the right to talk to a lawyer and to have one present during questioning. Number four said if you want a lawyer and can afford one—correction—and cannot afford one, one will be appointed to represent you. The next question goes, "Do you want to speak to me without a lawyer present? And <u>he indicated that he did want to speak to us</u> by affixing his initials to the "yes" blank."

PROSECUTOR: Okay.

OFFICER BRITTON: And then he signed his signature.

PROSECUTOR: And did Officer Murphy also sign?

OFFICER BRITTON: Officer Murphy signed it, and I witnessed it by signing it.

PROSECUTOR: Now, who was doing the talking, you or Officer Murphy?

STATE v. GILLIS

[158 N.C. App. 48 (2003)]

OFFICER BRITTON: Investigator Murphy.

PROSECUTOR: Thank you.

(emphasis added). Testimony was subsequently elicited from Officer Murphy as follows:

PROSECUTOR: And what is it?

OFFICER MURPHY: It's your general Adult Rights Form which is your Miranda rights.

PROSECUTOR: Were you present when those rights were given?

OFFICER MURPHY: Yes, I was. I read the rights.

PROSECUTOR: And did Mr. Gillis agree to talk with you?

OFFICER MURPHY: Yes, he did.

PROSECUTOR: Okay. And after talking with you, did he make a written statement?

OFFICER MURPHY: Yes ma'am. He made a verbal statement and a written statement.

(emphasis added). We conclude that the testimony elicited from Officers Britton and Murphy does not indicate that defendant asserted his right to remain silent, but instead establishes that he chose to make a statement. Indeed, defendant's written statement was introduced at trial without objection. Thus, the challenged testimony does not constitute an improper comment on defendant's exercise of his constitutional rights, and was neither error nor plain error.

We acknowledge that both the defendant and the State have presented arguments on appeal based on the assumption that, contrary to the contents of the certified transcript, the trial testimony of Officer Britton was that defendant stated he would not speak with the investigators. However, "[a] certified record imports verity, and this Court is bound by it. Defense counsel and the district attorney, as officers of the court, have an equal duty to see that reporting errors in the transcript are corrected." *State v. Robinson*, 327 N.C. 346, 360, 395 S.E.2d 402, 410 (1990) (citing *State v. Sanders*, 312 N.C. 318, 319, 321 S.E.2d 836, 837 (1984)). Further, this "Court is bound on appeal by the record on appeal as certified and can judicially know only what appears in it. When, . . . the trial transcript . . . is filed by appellant . . . the trial transcript must be treated as part of the record

on appeal for purposes of applying the rule that this Court is bound by what appears in the record on appeal." *State v. Lawson*, 310 N.C. 632, 641, 314 S.E.2d 493, 499 (1984). Moreover, even if the transcript were as defendant contends, the challenged testimony would not constitute plain error in view of the overwhelming evidence of defendant's guilt. This assignment of error is overruled.

III.

**[3]** The defendant's next argument is that the trial court erred by failing to dismiss the charges against him at the close of all the evidence. Defendant contends that the evidence was insufficient to sustain a conviction. We disagree.

In ruling on a motion to dismiss for insufficient evidence, the trial court "must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996) (citation omitted). Evidence is considered 'substantial' if it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991) (quoting *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)). "The trial court's function is to determine whether the evidence will permit a reasonable inference that the defendant is guilty of the crimes charged." *Vause*, 328 N.C. at 237, 400 S.E.2d at 61. In making this determination, "the trial court must analyze the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from the evidence. The trial court must also resolve any contradictions in the evidence in the State's favor." *State v. Robinson*, 355 N.C. 320, 336, 561 S.E.2d 245, 256 (2002) (citations omitted).

Defendant argues that there was insufficient evidence to support his conviction of attempted armed robbery. In general, conviction of an <u>attempt</u> to commit a crime requires (1) evidence that defendant intended to commit the offense, and (2) evidence of "an overt act done for that purpose which goes beyond mere preparation, but (3) falls short of the completed offense." *State v. Miller*, 344 N.C. 658, 667, 477 S.E.2d 915, 921 (1996) (citation omitted). "An attempted robbery with a dangerous weapon occurs when a person, with the specific intent to unlawfully deprive another of personal property by endangering or threatening his life with a dangerous weapon, does some overt act calculated to bring about this result." *State v. Allison*,

319 N.C. 92, 96, 352 S.E.2d 420, 423 (1987) (citing *State v. Irwin*, 304 N.C. 93, 282 S.E. 2d 439 (1981)).

The evidence presented in the instant case, taken in the light most favorable to the State, showed the following: (1) defendant had a prior history of robbing people to whom he sold drugs; (2) on 23 January 1998, defendant told Brookins that he planned to rob the victim when the victim returned to buy cocaine; (3) after announcing that he planned to rob the victim, defendant then retrieved his sawed off shotgun from its hiding place; (4) when the victim returned to the house, defendant waited until the victim was leaving and followed him outside, carrying his gun; (5) as the defendant followed the victim towards his car, defendant did or said something which led the victim to ask if defendant meant to rob him; and (6) within two minutes of following the victim outside, defendant shot the victim and killed him. Thus, evidence was presented of defendant's intent to rob the victim (his statement to Brookins) and of overt acts in furtherance of this goal (arming himself, following the victim with the gun, shooting the victim). We conclude that there was ample evidence from which the jury could convict defendant of attempted armed robbery. This assignment of error is overruled.

[4] Defendant also argues that there was insufficient evidence of a connection between the homicide and the attempted armed robbery, and thus that his conviction for felony first degree murder must be vacated. We disagree. Felony first degree murder includes any murder "committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon[.]" N.C.G.S. § 14-17 (2001). Accordingly, defendant may properly be convicted of first degree murder if he killed the victim "in the perpetration or attempted perpetration" of armed robbery. *State v. Oliver*, 334 N.C. 513, 521, 434 S.E.2d 202, 206 (1993) ("By statutory definition, a murder committed during the perpetration of an attempted armed robbery is first-degree murder.").

The North Carolina Supreme Court has articulated the "test for whether the felony and the murder are so connected as to invoke the felony murder rule" as follows:

A killing is committed in the perpetration or attempted perpetration of a felony for purposes of the felony murder rule where there is no break in the chain of events leading from the initial

felony to the act causing death, so that the homicide is part of a series of incidents which form one continuous transaction.

*State v. Fields*, 315 N.C. 191, 197, 337 S.E.2d 518, 522 (1985) (quoting *State v. Hutchins*, 303 N.C. 321, 345, 279 S.E. 2d 788, 803 (1981)). In *State v. Terry*, 337 N.C. 615, 622, 447 S.E.2d 720, 723-24 (1994), the North Carolina Supreme Court again addressed the issue of the connection required between the underlying felony and the homicide to sustain a conviction of first degree felony murder, holding that:

> The law does not require that the homicide be committed to escape or to complete the underlying felony in order to apply the felony-murder principle . . . there need not be a 'causal relationship' between the underlying felony and the homicide, only an 'interrelationship.'

*See also State v. Parker*, 350 N.C. 411, 423, 516 S.E.2d 106, 116 (1999) (" 'This Court, on numerous occasions, has held that to support convictions for a felony offense and related felony murder, all that is required is that the elements of the underlying offense and the murder occur in a time frame that can be perceived as a single transaction.' ") (quoting *State v. Wilkinson*, 344 N.C. 198, 216, 474 S.E.2d 375, 384 (1996)).

In the present case, the evidence, taken in the light most favorable to the State, showed that the defendant intended to commit armed robbery against the victim; that in furtherance of this intent, he followed the victim outside, armed with a sawed off shotgun; and that within the next two minutes the defendant shot and killed the victim. We conclude that this was sufficient evidence that the shooting was committed as part of a continuous transaction, and showed an interrelationship between the attempted armed robbery and the homicide. Accordingly, the trial court did not err by denying defendant's motion to dismiss for insufficiency of the evidence. This assignment of error is overruled.

IV.

[5] Defendant has also argued, and the State concedes, that upon his conviction of first degree murder on a theory of felony murder, judgment on the underlying felony should have been arrested. We agree. *See, e.g., State v. Wilson*, 345 N.C. 119, 122, 478 S.E.2d 507, 510 (1996) ("when the sole theory of [defendant's conviction of] first-degree murder is the felony murder rule, a defendant cannot be sentenced on the underlying felony in addition to the sentence for first-degree mur-

der"); *State v. Ocasio*, 344 N.C. 568, 581, 476 S.E.2d 281, 288 (1996) ("the trial court erred in failing to arrest judgments on the first-degree kidnapping convictions when these convictions were the underlying felonies for the felony murder convictions"). Accordingly, judgment is arrested on defendant's conviction of attempted armed robbery.

V.

**[6]** Defendant argues next that the trial court committed plain error by not instructing the jury on self defense. We find this argument to be without merit.

In general, an instruction on self defense is appropriate only where there is evidence that the defendant reasonably believed it was necessary to kill in order to protect himself:

> [B]efore the defendant is entitled to an instruction on self-defense, two questions must be answered in the affirmative: (1) Is there evidence that the defendant in fact formed a belief that it was necessary to kill his adversary in order to protect himself from death or great bodily harm, and (2) if so, was that belief reasonable?

*State v. Lyons*, 340 N.C. 646, 662, 459 S.E.2d 770, 778 (1995) (citation omitted). However, in the absence of such evidence, a defendant is not entitled to a jury instruction on self-defense:

> [D]efendant never presented any evidence that he acted under a reasonable belief that it was necessary to kill in order to save himself from death or great bodily harm. This is the first requirement to establish any type of self-defense, perfect or imperfect. As defendant could not meet this requirement, he was not entitled to any instruction on self-defense, perfect or imperfect.

*State v. Reid*, 335 N.C. 647, 672, 440 S.E.2d 776, 790 (1994). In the instant case, no evidence was presented that defendant had formed a belief, reasonable or otherwise, that he was in imminent danger of great bodily harm, or that the defendant acted in self defense when he followed the victim outside and then shot him with a sawed off shotgun.

Morever, where a defendant is convicted of felony first degree murder, self defense is largely unavailable as a defense. *State v. Richardson*, 341 N.C. 658, 668, 462 S.E.2d 492, 499 (1995) ("Self-defense, perfect or imperfect, is not a defense to first-degree murder under the felony murder theory, and only perfect self-defense is

applicable to the underlying felonies"). Thus, "the legislature has, in essence, established a *per se* rule of accountability for deaths occurring during the commission of felonies." *State v. Bell,* 338 N.C. 363, 386, 450 S.E.2d 710, 723 (1994). We conclude that on the facts of this case, the defendant failed to establish that he was entitled to an instruction on self defense, and that the court did not commit plain error by failing to so instruct. This assignment of error is overruled.

We conclude that defendant was properly convicted of first degree murder based upon the theory that the murder was committed in the course of an attempted armed robbery of the victim. We have examined defendant's remaining assignments of error and conclude that they are without merit. Accordingly, as to defendant's conviction of first degree murder we find no error. As to defendant's conviction of attempted armed robbery, judgment is arrested.

No Error as to the conviction of first degree murder.

Judgment arrested as to the conviction of attempted armed robbery.

Judges WYNN and TIMMONS-GOODSON concur.