STATE OF NORTH CAROLINA v. VICTORIA GRAHAM GOODE

No. COA08-1145

(Filed 16 June 2009)

**1. Constitutional Law— effective assistance of counsel—conceding guilt of lesser offense**

A first-degree murder defendant was not denied effective assistance of counsel when her attorney conceded guilt of second-degree murder to the jury. Defendant gave a knowing and voluntary consent in response to an inquiry by the trial court, and did not demonstrate any deficiency in her counsel's performance.

**2. Criminal Law— competency to stand trial—no objection to trial resuming—hearing waived**

A first-degree murder defendant effectively waived her statutory right to a competency hearing when she did not object to the trial court resuming the trial without the hearing after an adjournment taken because the jail staff had not given defendant her anti-anxiety medication.

**3. Criminal Law— transferred intent—attack on murder victim with car—bystander injured**

The trial court did not err in a first-degree murder prosecution by applying the doctrine of transferred intent to an instruction on attempted first-degree murder.

**4. Homicide— felony murder—instructions—no plain error**

There was no plain error in giving a felony murder instruction where defendant was also convicted on the basis of malice, premeditation and deliberation.

Appeal by Defendant from judgment entered 27 March 2008 by Judge Orlando F. Hudson in Wake County Superior Court. Heard in the Court of Appeals 24 March 2009.

*Attorney General Roy A. Cooper, by Assistant Attorney General Alvin W. Keller, Jr., for the State.*

*Amos Granger Tyndall, for Defendant.*

BEASLEY, Judge.

Victoria Graham Goode (Defendant) appeals from judgment entered on her convictions of first-degree murder and attempted first-degree murder. We find no error.

The evidence shows the following: Defendant was involved in a romantic relationship with Tanya Mattison (Mattison) for seven years. They lived together approximately four to five years. Defendant discovered in early 2007 that Mattison had cheated on her with Veronica Malone (Malone), but the couple agreed to stay together. However, on the morning of 1 July 2007, Mattison informed Defendant that she was terminating the relationship. Defendant, in an attempt to prevent Mattison from leaving the residence, took Mattison's keys, some of her jewelry, and her cell phone. Defendant left their residence and drove to a nearby park.

While Defendant was at the park, Malone and her nephew, D.M.[1], went to Defendant's residence to assist Mattison with her plans to move out of the home. D.M. testified that as he and Malone were loading up Malone's car, a Dodge Durango, he overheard Mattison yell, "there she goes." D.M. then saw Defendant driving her blue Camry towards the Durango. As Malone stood between the inside of the Durango and its door, Defendant's car hit the Durango's opened door and D.M. saw Malone laying on the road, badly injured. D.M. went inside the home to call the police and when he returned outside, he witnessed Defendant running towards the house with a hammer in her hand. D.M. testified that Defendant was running up the street yelling, "I am going to kill that b———, I am going to get you." Mattison succeeded in grabbing the hammer out of Defendant's hands and wrestling her to the ground.

Demarcus Mouzzon (Mouzzon)[2], who lived in the neighborhood, testified that Defendant got back into her Camry, drove down the

---

1. D.M. is a pseudonym used to refer to a juvenile to protect the privacy.

2. D.M. and Demarcus Mouzzon (Mouzzon) are not the same person.

**STATE v. GOODE**

[197 N.C. App. 543 (2009)]

street, "[m]ade a U-turn and just gunned it." D.M. attempted to help Malone, who was laying down on the street, when Defendant struck both of them with her Camry, running over Malone and hitting D.M. Mouzzon testified that Defendant did not appear to use the brakes after making a U-turn until she struck Malone.

Tomocus Alston (Alston), who also lived in the neighborhood, corroborated Mouzzon's testimony. As Alston attempted to assist Malone, he saw Defendant drive her car in their direction, running over Malone, and dragging her 20 yards.

D.M. testified that he could not stand up because his legs were broken. Both victims were taken to the hospital. D.M. was treated for two broken legs, but Malone died later that day. The cause of Malone's death was multiple blunt force injuries consistent with being struck by a vehicle.

At trial, the jury found Defendant guilty of first-degree murder of Malone and attempted first-degree murder of D.M. Defendant was sentenced to life imprisonment without parole. From these judgments and convictions, Defendant appeals.

## INEFFECTIVE ASSISTANCE OF COUNSEL

[1] Defendant first argues her attorney conceded her guilt to second-degree murder without her consent. As a result, Defendant further argues that she was denied effective assistance of counsel. We disagree.

Defendant relies on *State v. Harbison*, where our Supreme Court held that, "a counsel's admission of his client's guilt, without the client's knowing consent and despite the client's plea of not guilty, constitutes ineffective assistance of counsel." *State v. Harbison*, 315 N.C. 175, 179, 337 S.E.2d 504, 506-07 (1985). When this occurs, "the harm is so likely and so apparent that the issue of prejudice need not be addressed." *Id.* at 180, 337 S.E.2d at 507. We reiterate that "[a] plea decision must be made exclusively by the defendant. . . . Because of the gravity of the consequences, a decision to plead guilty must be made knowingly and voluntarily by the defendant after full appraisal of the consequences." *Id.* "For us to conclude that [defendant] permitted his counsel to concede his guilt to a lesser-included crime, the facts must show, at a minimum, that defendant *knew* his counsel [was] going to make such a concession." *State v. Matthews*, 358 N.C. 102, 109, 591 S.E.2d 535, 540 (2004).

In the present case, Defendant's counsel explained to the trial court judge in Defendant's presence that Defendant had consented to permitting her counsel to argue to the jury that she was guilty of homicide, but not first-degree murder. The trial court judge spoke directly with Defendant to ensure that she understood and consented to an admission of guilt to homicide, less than first-degree murder. The following colloquy, in relevant part, between the trial court and Defendant occurred:

Court:	Your lawyer has indicated to the Court, as you have heard him a moment ago, that he is going to argue to the jury that you may have caused the death of at least right now Miss Malone, but that it was not first degree murder and that he may argue to the jury that they can consider some lesser offense I presume less than first degree murder. You have a right to plead not guilty and have a jury trial on all of the issues. You can concede you are guilty on some lesser offense if you so desire for whatever reason.

. . . .

The only issue before the Court is whether or not you will allow your lawyer to proceed with this trial strategy. That is, argue that you may be guilty of some offense other than first degree murder. It's not something that you have to do. It is something that you can do—that he can do with your consent. I want to know if Mr. Collins your lawyer has, first of all, talked over this strategy were [sic] you at some point.

Defendant:	Yes, sir.

Court:	All right. Do you understand that you do not have to concede that you are guilty of any offense, and that as a matter of trial strategy you can concede that. That is your right? Do you understand that?

Defendant:	Yes, sir.

Court:	What is it you wish to tell the Court, if anything, about this situation? Do you consent to your lawyer making the argument that he intends to make to the jury or do you not consent?

STATE v. GOODE

[197 N.C. App. 543 (2009)]

Defendant: I consent.

Court:      All right. Is there anything you want to ask the Court about that or is there anything you want to say about that situation?

Defendant: Not at this time.

. . . .

Court:      Then Mr. Court Reporter, Mr. Collins, the lawyer for the defendant, has addressed the Court in open court in the presence of the defendant that as a trial strategy he may argue to the jury, with the consent of the defendant, that she might be guilty of some lesser offense other than first degree murder. The Court has explained this situation to the defendant and given her an opportunity to respond. The Court finds as a fact, and concludes as a matter of law, that the defendant consents to this trial strategy used by her lawyer though [sic] argument that if she is guilty of anything at all, that it is some lesser included offense other than first degree murder. Court finds this to be the informed consent of the defendant, that it is made freely, voluntarily and understandingly, and the Court finds that the lawyer can make such argument without detriment to the defendant.

The trial court's inquiry of Defendant is sufficient evidence that Defendant knowingly consented to an admission of guilt. In *State v. McDowell*, our Supreme Court found a knowing consent to a concession of guilt where the record revealed that the trial court informed defendant of the need for authorization for the concession, that defendant stated he and counsel had discussed the arguments, that defendant had consented to the concession, and that counsel's jury argument was as Defendant had authorized. *State v. McDowell*, 329 N.C. 363, 387, 407 S.E.2d 200, 213 (1991). In the present case, Defendant knowingly and voluntarily consented to allow her attorney to admit her guilt to second-degree murder. As our Supreme Court held in *McDowell*, we conclude that the trial court's inquiry was consistent with the requirements of *Harbison*.

When there is a knowing consent, as demonstrated by this case, "the issue concerning ineffective assistance of counsel should be examined pursuant to the normal ineffectiveness standard set forth in

*Strickland v. Washington*[.]" *McDowell*, 329 N.C. at 387, 407 S.E.2d at 213. Defendant must show two things. First, Defendant must show that her counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984) Second, Defendant must also show that the deficient perform-ance prejudiced the defense. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* There must be a demonstration that "there is a reasonable probability that, but for counsel's unprofes-sional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine con-fidence in the outcome." *Id.* at 694, 80 L. Ed. 2d at 698.

As we discussed above, Defendant gave a knowing and voluntary consent to her counsel to concede guilt to a lesser offense. De-fendant's counsel conceded that Defendant was guilty of second-degree murder but not first-degree murder in his opening and closing arguments. Defendant has not demonstrated any deficiency in her counsel's performance nor that she was therefore deprived of a fair trail. This assignment of error is overruled.

## COMPETENCY

**[2]** In Defendant's second argument, she contends that the trial court erred by failing to ensure Defendant was competent for trial through-out all the proceedings. Defendant argues that her due process rights under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Sections 19 and 23 of the North Carolina Constitution were violated when the trial court failed to ensure that she had the mental capacity to understand the nature and object of the proceedings, to consult with counsel, and to assist in preparing her defense during all phases of the trial. We disagree.

"The question of the capacity of the defendant to proceed may be raised at any time on motion by the prosecutor, the defendant, the defense counsel, or the court." N.C. Gen. Stat. § 15A-1002(a) (2007). N.C. Gen. Stat. § 15A-1001(a) (2007) provides that:

[n]o person shall be tried, convicted, sentenced or punished for a crime when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner.

The burden rests upon Defendant to establish his mental incapacity. *State v. Gates*, 65 N.C. App. 277, 283, 309 S.E.2d 498, 502 (1983).

On 25 March 2008, Defendant's counsel informed the trial court of his concern for Defendant's mental state because the staff in the jail had not given Defendant her anti-anxiety medication for that day. The following, in pertinent part, was exchanged:

> DEFENSE: I have noticed a steadily deteriorating emotional state of [Defendant] over the course of the day. . . . We had a talk . . . [w]hat she said to me then was I can't do this anymore, but I felt like that she was still competent. I learned . . . that she was not given the medication that she has been taking . . . since July for anxiety. . . . For reasons unknown to use [sic] that was not given to her this morning. I just asked her if she knows where she is and she told me no. . . .

> COURT: She told you what?

> DEFENSE: She said no. . . . I anticipate and I plan to call her as a witness. I am completely confident that she is not able to do that right now. . . . And I will say that this is the first indication that I have had since I began representing her that there was any question about her competence. I had her evaluated by a psychologist for competence early on, and that's never been an issue.

At the request of Defendant's counsel, the trial court adjourned until the next day.

During the recess, in open court and outside the presence of the jury, the trial court determined that Defendant had not received her medication that morning "through no fault of her own," but because the nurse dispensing the medications had not reached Defendant before her trial. The following day, the trial court reconvened without any discussion or reference to Defendant's mental status. Once the court makes a determination that the defendant is competent to stand trial, the court's findings of fact are conclusive on appeal if there is evidence to support them. *State v. McCoy*, 303 N.C. 1, 18, 277 S.E.2d 515, 528 (1981).

Under normal circumstances, "the trial court '[m]ust hold a hearing to determine the defendant's capacity to proceed' *if* the question

is raised." *State v. King*, 353 N.C. 457, 466, 546 S.E.2d 575, 584 (2001) (quoting N.C. Gen. Stat. 15A-1002(b)(3)). However, as illustrated by the present case, "a defendant may waive the benefit of statutory or constitutional provisions by express consent, failure to assert it in apt time, or by conduct inconsistent with a purpose to insist upon it." *State v. Young*, 291 N.C. 562, 567, 231 S.E.2d 577, 580 (1977) (internal quotations omitted). Because Defendant "did not thereafter request a competency hearing or make a motion detailing the specific conduct that leads the moving party to question [Defendant's] capacity to proceed," Defendant "waived [her] statutory right to a competency hearing under N.C.G.S. § 15A-1002(b) by [her] failure to assert that right." *King*, 353 N.C. at 466, 546 S.E.2d at 585. Therefore, when Defendant failed to object to the trial court resuming the trial without a competency hearing, she effectively waived her statutory rights. This assignment of error is overruled.

## TRANSFERRED INTENT

**[3]** Defendant argues that the trial court erred by applying the common law doctrine of transferred intent to the instruction of attempted first-degree murder in regards to D.M. We disagree.

The common law doctrine of transferred intent provides that:

> [i]t is an accepted principle of law that where one is engaged in an affray with another and unintentionally kills a bystander or a third person, his act shall be interpreted with reference to his intent and conduct towards his adversary. Criminal liability, if any, and the degree of homicide must be thereby determined. Such a person is guilty or innocent exactly as [if] the fatal act had caused the death of his adversary. It has been aptly stated that "[t]he malice or intent follows the bullet."

*State v. Wynn*, 278 N.C. 513, 519, 180 S.E.2d 135, 139 (1971) (quoting 40 Am. Jur., 2d Homicide, § 11). Under this doctrine "it is immaterial whether [Defendant] intended injury to the person actually harmed; if [Defendant] in fact acted with the required or elemental intent toward someone, that intent suffices as the intent element of the crime charged as a matter of substantive law." *State v. Locklear*, 331 N.C. 239, 245, 415 S.E.2d 726, 730 (1992).

In *State v. Andrews*, 154 N.C. App. 553, 572 S.E.2d 798 (2002), the defendant was convicted of two counts of attempted first-degree murder. The evidence showed that the defendant was separating from his wife, Kelly Andrews (Kelly). One day while Kelly and her friend, Brian

Evsich (Evsich), were walking in a store parking lot, the defendant "revved" his engine and struck both Kelly and Evsich with his car. *Id.* at 555, 572 S.E.2d at 800. Once the car stopped, the defendant approached Kelly, stabbing her three times. *Id.* In the *Andrews* case, our Court held that the instruction of transferred intent was proper. "Because defendant acted with the specific intent to kill [Kelly], evidence of that intent could properly serve as the basis of the intent element of the offense against [Evsich]." *Id.* at 559, 572 S.E.2d at 802.

We apply the reasoning of *Andrews* to the case before us in our analysis of whether the evidence is sufficient to support the doctrine of transferred intent. Defendant injured D.M. while intending to attack Malone. Whether Defendant possessed the specific intent to injure D.M. is not the query. Defendant's specific intent to murder Malone serves as a sufficient basis for the charge of attempted first-degree murder of D.M. Therefore, the trial court did not err in instructing the jury on the doctrine of transferred intent. This assignment of error is overruled.

## JURY INSTRUCTIONS

[4] In Defendant's final assignment of error, she argues that the trial court erred by instructing the jury, over Defendant's objection, that it could find Defendant guilty of first-degree murder based on the felony murder rule. We disagree.

The jury was charged with the following instructions, in pertinent part:

> You may find the defendant guilty of first degree murder either on the basis of malice, premeditation and deliberation, or under the first degree felony murder rule, or both.

> First degree murder on the basis of malice, premeditation and deliberation is the intentional and unlawful killing of a human being with malice and with premeditation and deliberation.

> First degree murder under the first degree felony murder rule is the killing of a human being in the perpetration of or attempt to perpetrate assault with a deadly weapon inflicting serious injury.

> . . . .

> Members of the jury, if you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant intentionally assaulted the victim with a deadly weapon and in-

flicted serious injury, and that while committing or attempting to commit assault with a deadly weapon inflicting serious injury the defendant killed the victim, and that the defendant's act was a proximate cause of the victim's death, and that the defendant committed or attempted to commit assault with a deadly weapon inflicting serious injury with the use of a deadly weapon, then it would be your duty to return a verdict of guilty of first degree murder under the felony murder rule.

Defendant requested that the trial court judge not instruct the jury on the felony murder rule because the evidence did not support such an instruction. However, Defendant now argues that because the instruction refers to "the victim" in the singular form, that this instruction was error. Defendant contends that our Supreme Court noted in *State v. Jones*, 353 N.C. 159, 538 S.E.2d 917 (2000), that " 'cases involving a single assault victim who dies of his injuries have never been' construed to allow the underlying assault of a victim to satisfy the predicate felony for the felony murder of the same victim."

"In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C.R. App. P. 10(b)(1). "When the error asserted on appeal is not grounded in the objection before the trial court the alleged error is not preserved for appellate review." *State v. Riley*, 159 N.C. App. 546, 553, 583 S.E.2d 379, 384 (2003). "As the objections at trial in no way supported defendant's assignment of error on appeal, we conclude that defendant did not preserve this error for appellate review pursuant to Rule 10(b)(2)." *State v. Francis, Jr.*, 341 N.C. 156, 160, 459 S.E.2d 269, 271 (1995). Therefore, we must review this assignment error under the plain error standard. *State v. Odom*, 307 N.C. 655, 656, 300 S.E.2d 375, 376 (1983).

In *State v. Odom*, the Supreme Court defines the plain error rule as follows:

[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," . . . or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*Odom,* 307 N.C. at 660, 300 S.E.2d at 378 (quoting *United States v. McCaskill,* 676 F.2d 995, 1002 (4th Cir. 1982)). Before relief under the "plain error" rule, " 'the appellate court must be convinced that absent the error the jury probably would have reached a different verdict.' " *State v. Hartman,* 90 N.C. App. 379, 383, 368 S.E.2d 396, 399 (1988) (quoting *State v. Walker,* 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986)).

In the present case, Defendant was convicted of the first-degree murder of Malone on the basis of both malice, premeditation, and deliberation and under the first-degree felony murder rule. Therefore, the fact that Defendant was convicted under the felony murder rule is immaterial as it does not have a probable effect on the jury finding Defendant guilty of first-degree murder. Assuming *arguendo* that instructing the jury on the felony murder rule was error, the absence of that error would not have led the jury to reach a different verdict. Because the jury found Defendant guilty of first degree murder under both theories, the verdict would have remained the same. Consequently, Defendant has failed to show plain error and this assignment of error must be overruled.

For the foregoing reasons, we conclude that the Defendant had a fair trial, free from prejudicial error.

No error.

Judges McGEE and GEER concur.