**STATE v. ROBINSON**

[221 N.C. App. 509 (2012)]

STATE OF NORTH CAROLINA v. RODNEY LAMAR ROBINSON

No. COA11-1584

(Filed 17 July 2012)

**1. Constitutional Law—due process—competency to stand trial—evidence did not support determination—no prejudice**

The trial court abused its discretion in a first-degree murder case by denying defendant's motion to be evaluated by a mental health professional to determine his competency to proceed with trial. The trial court conducted a proper competency hearing but the evidence did not support its determination that defendant was competent to proceed with trial. However, in light of a medical expert's testimony for the defense at trial that he was not concerned about defendant's current competency, the trial court's error did not prejudice defendant.

**2. Confessions and Incriminating Statements—Miranda rights—waiver—voluntary**

The trial court did not err in a first-degree murder case by failing to suppress defendant's statement. The evidence was sufficient to demonstrate that defendant's waiver of his *Miranda* rights prior to making any incriminating statements was knowing, intelligent, and voluntary. Further, defendant's argument that the language used to convey the fourth *Miranda* right to him was inadequate was not preserved for appellate review.

Appeal by defendant from judgment entered 28 February 2011 by Judge James U. Downs in Buncombe County Superior Court. Heard in the Court of Appeals 24 May 2012.

*Attorney General Roy Cooper, by Special Deputy Attorney General L. Michael Dodd, for the State.*

*Glover & Peterson, P.A., by James R. Glover, for defendant appellant.*

McCULLOUGH, Judge.

STATE v. ROBINSON

[221 N.C. App. 509 (2012)]

On 28 February 2011, a jury found Rodney Lamar Robinson ("defendant") guilty of first-degree murder. The trial court entered judgment on the verdict, sentencing defendant to life imprisonment without the possibility of parole. On appeal, defendant challenges the trial court's (1) denial of his motion requesting that he be evaluated by a mental health professional to determine his competency to proceed with trial, and (2) denial of his motion to suppress his statements made during a recorded interrogation at the police station during which he produced a handwritten statement. After careful review, we hold defendant received a fair trial free from prejudicial error.

## I. Background

On 16 August 2009, just before 2:00 p.m., defendant assaulted Angela Hart ("Hart") with a paring knife, and Hart died as a result of the loss of blood from the injuries inflicted during the assault. During the four months prior to her murder on 16 August 2009, Hart lived with defendant in defendant's mother's home located on Woodlawn Avenue in Asheville, North Carolina.

On the date of the assault, Hart contacted defendant by telephone, during which defendant lied to Hart and told her that his mother had a nervous breakdown and that she needed to come home. When she arrived at the house, defendant again lied to her and told her he had stored some of her belongings in the basement and that she should accompany him to the basement. At the top of the basement stairs, defendant first stabbed Hart in the neck with the paring knife. Hart attempted to run from defendant, and he chased her outside around the house onto Young Street, where he tackled her against a parked car. Defendant proceeded to stab Hart repeatedly. Hart again attempted to run away from defendant, but she fell down, upon which defendant caught her and began stabbing her repeatedly. Hart then tried to run towards a nearby house, as defendant followed and continued to stab her. When Hart no longer moved, defendant returned to his house.

Several neighbors in the area heard a female screaming for help, saw defendant stabbing Hart multiple times, and called 911. Officer Robert Bingaman with the Asheville Police Department ("Officer Bingaman") was the first police officer to arrive at the scene at approximately 1:50 p.m. As Officer Bingaman approached the area, he observed defendant crossing the street in front of defendant's house with his hands, arms, bare chest, and pants covered in blood. Officer Bingaman exited his patrol vehicle and approached defendant

in front of defendant's house, and defendant "threw his hands in the air" and stated that he was "not resisting." Defendant complied with Officer Bingaman's order to get on the ground and was handcuffed. During this time, defendant stated that he "just killed a woman." When Officer Bingaman stood defendant up and asked defendant where the woman was, defendant motioned with his head and eyes in the direction of Hart's body and stated, "She's over there." After providing his name and address to Officer Bingaman, defendant spontaneously stated, "I'm glad this is over. I'm about to meet my maker." A dispatcher riding with Officer Bingaman checked the location indicated by defendant and reported back to Officer Bingaman that he had observed a body. EMS personnel arrived soon thereafter and pronounced Hart dead at the scene.

The pathologist who conducted Hart's autopsy testified that Hart sustained a total of 57 sharp force injuries. Forty-four of those injuries were superficial, penetrating through the skin and soft tissue but no vital organs or major blood vessels. The remaining thirteen were deeper stab wounds, including four in Hart's back that penetrated both of her lungs. Thirty-six of the injuries were inflicted on Hart's face, head and neck, one of which penetrated her eyeball. The paring knife used in the assault was left imbedded in Hart's right cheek. At the scene, EMS personnel also asked defendant if he was injured, to which defendant responded that he had cut his hand when he was "cutting that b---h." Defendant was arrested and taken to the Asheville Police Department.

At approximately 4:30 p.m., Detective Matthew Davis ("Detective Davis"), with defendant's consent, took swabs of the blood on defendant's chest and a swab from defendant's cheek for DNA. Defendant asked Detective Davis if Hart was dead or alive, to which Detective Davis responded that he did not know the status of her condition at that time. Defendant was then taken to a decontamination room where he was bathed and bandaged. Defendant was placed in an interview room equipped with an audio-video recording system and was given some food.

As defendant was finishing his meal, Detective Davis entered the interview room at approximately 7:00 p.m. and asked defendant if he was "ready to talk for a little bit[.]" Defendant responded that he was ready, that he "wanted to do the right thing," that he was "sorry for what he did," and that he had "asked God to forgive him." Detective Davis informed defendant that he would need to sign a waiver of his *Miranda* rights in order to speak with the detective about what had

happened. Specifically, Detective Davis told defendant, "You've got to waive your rights, basically saying you want to talk to me, that's all this is saying, and then we can move on and hear your story." Detective Davis confirmed that defendant could read and write and then read the *Miranda* rights to defendant from a pre-printed waiver form. Detective Davis had defendant initial beside each paragraph and sign the waiver form. Detective Davis then proceeded to question defendant about the assault. During the interrogation, Detective Davis asked defendant to make a written statement, with which defendant complied. Defendant's statements to Detective Davis revealed that he had become frustrated with Hart and that he had planned to kill her and commit suicide afterwards. However, his mother would not let him back inside the house after he assaulted Hart. After obtaining defendant's written statement, Detective Davis informed defendant that Hart had died and that defendant would be charged with first-degree murder.

Defendant was indicted for first-degree murder on 5 April 2010. The case came on for trial on 21 February 2011 in Buncombe County Superior Court. At the call of the case, defense counsel presented to the trial court a motion questioning defendant's competency to proceed with the trial and seeking an assessment of his competency by a mental health professional. After conducting a brief hearing on the issue, the trial court denied the motion.

Defense counsel also moved the court to suppress defendant's statements made during the interrogation by Detective Davis following his arrest. Defense counsel asserted defendant did not knowingly and voluntarily waive his *Miranda* rights, and therefore, his statements as a result of the interrogation must be excluded. The trial court conducted a *voir dire* hearing on the motion, and at the conclusion of the hearing, the trial court enunciated multiple findings of fact and a conclusion of law that defendant had knowingly and voluntarily waived his *Miranda* rights prior to making the challenged statements and therefore the statements were admissible.

On 28 February 2011, the jury returned a verdict finding defendant guilty of first-degree murder. The trial court entered judgment on the verdict, sentencing defendant to life imprisonment without the possibility of parole. Defendant gave oral notice of appeal in open court.

## II. Motion for Competency Evaluation

[1] Defendant first argues the trial court erred in denying his motion requesting that he be evaluated by a mental health professional to determine his competency to proceed with trial.

" '[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to trial.' " *State v. McRae,* 139 N.C. App. 387, 389, 533 S.E.2d 557, 559 (2000) (hereinafter *McRae I)* (alteration in original) (quoting *Drope v. Missouri,* 420 U.S. 162, 171, 43 L. Ed. 2d 103, 113 (1975)); *see also* N.C. Gen. Stat. § 15A-1001(a) (2011). "Failure of the trial court to protect a defendant's right not to be tried or convicted while mentally incompetent deprives him of his due process right to a fair trial." *McRae I,* 139 N.C. App. at 389, 533 S.E.2d at 559 (citing *Pate v. Robinson,* 383 U.S. 375, 385, 15 L. Ed. 2d 815, 822 (1966)). Thus, "[a] conviction cannot stand where defendant lacks capacity to defend himself." *Id.* at 389-90, 533 S.E.2d at 559.

The question of a defendant's mental capacity may be raised at any time on motion by the prosecutor, the defendant, defense counsel, or the court. *State v. Goode,* 197 N.C. App. 543, 548, 677 S.E.2d 507, 511 (2009). Section 15A-1002(b) of our General Statutes provides that "[w]hen the capacity of the defendant to proceed is questioned, the court shall hold a hearing to determine the defendant's capacity to proceed." N.C. Gen. Stat. § 15A-1002(b) (2011). "Although the present statute requires the court to conduct a hearing when a question is raised as to a defendant's capacity to stand trial, no particular procedure is mandated. The method of inquiry is still largely within the discretion of the trial judge." *State v. Gates,* 65 N.C. App. 277, 282, 309 S.E.2d 498, 501 (1983). The statutory hearing requirement "appears to be satisfied as long as it appears from the record that the defendant, upon making the motion, is provided an opportunity to present any and all evidence he or she is prepared to present." *Id.* at 283, 309 S.E.2d at 502.

The burden rests upon the defendant to establish his mental incapacity. *Goode,* 197 N.C. App. at 549, 677 S.E.2d at 512; *see also State v. O'Neal,* 116 N.C. App. 390, 395, 448 S.E.2d 306, 310 (1994) ("A defendant has the burden of proof to show incapacity or that he is not competent to stand trial."). Ultimately, "the decision to grant a motion for an evaluation of a defendant's capacity to stand trial remains within the trial judge's discretion." *Gates,* 65 N.C. App. at 283, 309

S.E.2d at 502; *see also State v. Wolfe,* 157 N.C. App. 22, 30, 577 S.E.2d 655, 661 (2003).

> The trial court may determine the question of capacity with or without a jury. When proceeding without a jury, the trial court's findings of fact are conclusive on appeal when there is competent evidence to support them, even if there is evidence to the contrary. The trial court has not erred if it does not make findings of fact where the evidence would compel the ruling made, but the better practice is to make findings and conclusions.

*O'Neal,* 116 N.C. App. at 395-96, 448 S.E.2d at 310-11 (citations omitted). "Where the procedural requirement of a hearing has been met, defendant must show that the trial court abused its discretion in denying the motion before reversal is required." *Gates,* 65 N.C. App. at 284, 309 S.E.2d at 502.

We note also that our Supreme Court has advised that "[w]here a defendant demonstrates or where matters before the trial court indicate that there is a significant possibility that a defendant is incompetent to proceed with trial, the trial court must appoint an expert or experts to inquire into the defendant's mental health in accord with N.C.G.S. § 15A-1002(b)(1)." *State v. Grooms,* 353 N.C. 50, 78, 540 S.E.2d 713, 730 (2000).

Here, at the call of the case for trial, defense counsel presented to the trial court a motion, supported by an affidavit by defense counsel and prior mental health evaluation reports, questioning defendant's capacity to proceed with trial and seeking an assessment of his competency by a mental health professional. The trial court conducted a hearing on the motion, considering the documentary evidence and arguments presented by defense counsel.

In both his affidavit and his arguments to the trial court, defense counsel reported that he had met with defendant on multiple occasions during the weeks leading up to trial and that he observed a "substantial deterioration" in defendant's mental functioning on both the day before and the morning of trial. Defense counsel stated that defendant was agitated, was completely tangential in the sense that he could not carry on a rational conversation or stick to the point, could not follow a train of thought, and could not logically or rationally discuss any of the important issues involved in the defense of his case. Defense counsel also stated defendant was very animated and was unable to listen to or absorb the information and advice that

defense counsel was trying to give him. Defense counsel further reported that defendant cycled back and forth between mania and depression within a single conversation and that defendant was not taking his prescribed antidepressant medication while in jail. Defense counsel asserted that defendant was not presently capable of assisting his defense in a reasonable and rational manner or comprehending his situation in reference to the proceedings.

The evidence from the prior psychiatric evaluation reports indicated that defendant had a history of significant mental disorders. Defendant's IQ level was determined to be 68 by the Department of Corrections in 2006, placing him in the mild mental retardation range. In 2007, defendant was committed to Broughton Hospital, where he was diagnosed with impulse control disorder. In 2008, defendant was diagnosed with major depressive disorder associated with his being HIV-positive for nearly 20 years. Also in 2008, defendant was diagnosed with affective mood disorder with agitation and depression and was prescribed an antidepressant medication.

In December 2009, defendant was evaluated by both Dr. David Bartholomew, a psychiatrist, and Dr. Lavonne Fox, a psychologist, at Central Regional Hospital to determine his competency to stand trial. Both physicians noted their opinion that defendant was competent to stand trial, although Dr. Fox noted that defendant "should be assessed further if he exhibits changes in his cognitive functioning."

Defendant was again evaluated by both Dr. Claudia Coleman, a neuropsychologist, on 13 October 2010, although her report was dated 9 January 2011, and Dr. George Corvin, a psychiatrist, on 30 September and 23 November 2010, approximately three months prior to trial. Dr. Coleman found that defendant's cognitive functioning had "worsened to some degree" since his prior evaluations by Drs. Bartholomew and Fox. Dr. Coleman did not directly address defendant's competency to stand trial at that time, but noted that "[i]n order for [defendant] to attend readily and process information in an ongoing manner required during trial[, defendant] will need to demonstrate a relatively stable mood with no obsessive, bizarre, or paranoid thinking." Similarly, Dr. Corvin opined that defendant was competent to stand trial at the time of his evaluation but noted that "should his overall symptom picture worsen to any appreciable degree as the stress of trial builds, he could easily decompensate to the extent that he would be viewed as not capable of proceeding." Accordingly, Dr. Corvin warned that defendant's "condition and degree of understand-

**STATE v. ROBINSON**

[221 N.C. App. 509 (2012)]

ing of factors related to his case" should be closely monitored as litigation proceeds.

This evidence, presented to and considered by the trial court during the competency hearing, does not support the trial court's conclusion to deny defendant's motion for a competency evaluation prior to proceeding to trial. Although defendant had been found competent to proceed in the prior psychiatric evaluations, those same evaluations indicated defendant's competency could decline to the point of incompetence to proceed prior to his trial. In fact, over a period of ten months, from December 2009 to October 2010, defendant's mental condition was found to have "worsened to some degree." Defense counsel detailed in his affidavit his observation that defendant's mental condition had significantly declined during the week prior to trial, consistent with the warnings contained in the prior evaluations. "Because defense counsel is usually in the best position to determine that the defendant is able to understand the proceedings and assist in his defense, it is well established that significant weight is afforded to a defense counsel's representation that his client is competent." *State v. McRae*, 163 N.C. App. 359, 369, 594 S.E.2d 71, 78 (2004) (hereinafter *McRae II*); *see also State v. Blancher*, 170 N.C. App. 171, 174, 611 S.E.2d 445, 447 (2005).

The entirety of the evidence presented to the trial court indicated a "significant possibility" that defendant may have been incompetent to proceed with trial, necessitating the trial court to appoint an expert or experts to inquire into defendant's mental health, as defense counsel requested. *See Grooms*, 353 N.C. at 78, 540 S.E.2d at 730. Thus, because the evidence does not support the trial court's determination that defendant was competent to proceed with trial at the time of his competency hearing, the trial court abused its discretion in denying defendant's motion to continue the proceedings until defendant's competency to stand trial could be evaluated and determined.

The proper remedy in a case where, as here, the trial court conducted a proper competency hearing but abused its discretion in proceeding to trial in light of the evidence indicating the defendant's incompetency to proceed is to vacate defendant's judgment and remand the case to the trial court for a new trial if and when defendant is properly determined competent to proceed with trial. *Compare McRae II*, 163 N.C. App. at 361, 594 S.E.2d at 74 (noting the proper remedy in cases where the trial court failed to conduct a competency hearing in violation of a defendant's due process rights is to remand the case to the trial court to (1) determine whether it is possible for

a retrospective competency hearing to be held effectively, and (2) if so, to hold such a hearing to determine defendant's competency at the time of trial), with *State v. Reid*, 38 N.C. App. 547, 550, 248 S.E.2d 390, 392 (1978) (holding that where the trial court's determination that the defendant was mentally capable to proceed with trial was not supported by the evidence, the verdict and judgment must be vacated and the cause remanded for further proceedings against the defendant).

Nonetheless, in the present case, Dr. Corvin was called to testify on behalf of the defense on the fourth day of trial. During his testimony on direct examination, Dr. Corvin stated "there has been a time during my evaluation where I was somewhat concerned about [defendant's current competency to stand trial], although not currently." In light of that testimony, defense counsel did not proceed to question Dr. Corvin on any possibility of defendant's incompetency to stand trial. Given Dr. Corvin's presence at trial and his testimony that he was not currently concerned with defendant's competency to stand trial, we fail to see how the trial court's error prejudiced defendant. Accordingly, under the particular facts of this case, we must uphold the trial court's judgment.

### III.  Motion to Suppress

[2]  Defendant next argues the trial court erred in failing to suppress both his statements made during the recorded interrogation at the police station and his handwritten statement. Defendant argues the trial court erred in failing to suppress this evidence because the State failed to show that these custodial statements were preceded by a knowing, intelligent, and voluntary waiver by defendant of his *Miranda* rights. Defendant further challenges the adequacy of his *Miranda* warnings. Specifically, defendant argues that the officer did not convey in understandable terms that, despite his lack of means to pay a lawyer, the court would provide one at no expense to advise him before and during the interrogation unless he chose to waive that right.

Our review of a trial court's denial of a motion to suppress is strictly limited to determining whether the trial court's underlying findings of fact are supported by competent evidence, and whether those factual findings in turn support the trial court's ultimate conclusions of law. *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "[T]he trial court's findings of fact after a *voir dire* hearing concerning the admissibility of a confession are conclusive and binding on the appellate courts if supported by competent evidence. This is true even though the evidence is conflicting." *State v. Simpson*, 314

N.C. 359, 368, 334 S.E.2d 53, 59 (1985) (citations omitted). However, the trial court's conclusion of law that a defendant's statements were knowingly, intelligently, and voluntarily made is fully reviewable on appeal. *Id.; see also State v. Hyde*, 352 N.C. 37, 45, 530 S.E.2d 281, 288 (2000).

It is well established that the State is

> prohibited from using any statements resulting from a custodial interrogation of a defendant unless, prior to questioning, the defendant had been advised of his right to remain silent; that any statement may be introduced as evidence against him; that he has the right to have counsel present during questioning; and that, if he cannot afford an attorney, one will be appointed for him.

*Simpson*, 314 N.C. at 367, 334 S.E.2d at 58-59 (citing *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966)). However, "a defendant may waive effectuation of these rights by a voluntary, knowing, and intelligent waiver." *Id.* The State bears the burden of showing that the waiver was knowingly, intelligently, and voluntarily made. *Id.* "Whether a waiver is knowingly and intelligently made depends on the specific facts and circumstances of each case, including the background, experience, and conduct of the accused." *Id.* at 367, 334 S.E.2d at 59. Similarly, our Courts consider the totality of the circumstances of the case in determining whether a defendant's statement was voluntary. *Hyde*, 352 N.C. at 45, 530 S.E.2d at 288. Factors to be considered include the defendant's familiarity with the criminal justice system, length of interrogation, amount of time without sleep, whether the defendant was held incommunicado, whether there were threats of violence, whether promises were made to obtain the confession, the age and mental condition of the defendant, and whether the defendant had been deprived of food. *State v. Kemmerlin*, 356 N.C. 446, 458, 573 S.E.2d 870, 880-81 (2002). "The presence or absence of any one of these factors is not determinative." *Id.* at 458, 573 S.E.2d at 881.

Here, although defendant has not challenged any of the trial court's findings of fact, he argues the evidence does not support the trial court's conclusion that his statements were made after a knowing, intelligent, and voluntary waiver of his *Miranda* rights. Rather, defendant contends the totality of the circumstances indicate his *Miranda* waiver was neither knowing and intelligent nor voluntary. Defendant contends Detective Davis misled him about Hart's condi-

tion, asked him if he was ready to talk before informing him of his *Miranda* rights, and instructed him to sign the waiver form without asking him if he understood the implications. Defendant also points to the evidence concerning his limited mental capacity and his previously determined IQ score placing him in the category of borderline mental retardation.

However, in light of the foregoing principles, we disagree with defendant's arguments and conclude, as did the trial court, that the evidence is sufficient to demonstrate that defendant's waiver of his *Miranda* rights prior to making any incriminating statements was knowing, intelligent, and voluntary. The record reveals defendant was familiar with the criminal justice system, having four prior convictions, two of which were felony offenses. The record reveals no threats or promises were made to defendant prior to his agreeing to talk with Detective Davis. Although Detective Davis informed defend-ant that he did not know the status of Hart's condition, the record in no way indicates Detective Davis's statement misled defendant into talking about the incident when he otherwise would not have done so.

Further, the record reveals defendant was not deprived of any necessaries. To the contrary, defendant was given a shower, medical care, and food, as the trial court properly found. In addition, although there is evidence in the record documenting defendant's limited mental capacity, the record in no way indicates defendant was confused at any time during the custodial interrogation, that he did not understand any of the rights as they were read to him, or that he was unable to comprehend the ramifications of his statements. Indeed, "evidence of the defendant's below-average intelligence and his previous psychological problems do not compel suppression of the statement." *Simpson*, 314 N.C. at 369, 334 S.E.2d at 60. As the trial court's unchallenged findings of fact indicate, at all times during defendant's statements to Detective Davis, he "appeared lucid," "appeared to be awake," and "was alert." Thus, the evidence wholly indicates defendant was aware of his actions and wished to inform the officer about what had happened during his encounter with Hart.

As to defendant's argument regarding the adequacy of the language used to convey the fourth *Miranda* right to him, our Courts have long held that "where a theory argued on appeal was not raised before the trial court, 'the law does not permit parties to swap horses between courts in order to get a better mount . . . .' " *State v. Sharpe*, 344 N.C. 190, 194, 473 S.E.2d 3, 5 (1996) (quoting *Weil v. Herring*, 207

N.C. 6, 10, 175 S.E. 836, 838 (1934)). Here, the record indicates defendant presented both a written motion to suppress and arguments thereon to the trial court, contending defendant's statements must be suppressed in that they were not made after a knowing, intelligent, and voluntary waiver of his *Miranda* rights. At no time before the trial court did defendant present the adequacy of the rights as given to defendant as a basis for the suppression of his statements. Thus, this argument is not properly before this Court for appellate review. *See State v. Dewalt,* 190 N.C. App. 158, 164, 660 S.E.2d 111, 115-16 (2008).

Nonetheless, defendant contends the adequacy of the language used by the detective to convey the *Miranda* rights to defendant is an issue to be considered in determining whether defendant properly understood his *Miranda* rights and made a knowing and intelligent waiver of those rights. Again, however, the record supports the trial court's conclusion that defendant's waiver was knowing and intelligent, especially in light of his previous history with law enforcement. Indeed, defendant told Detective Davis he cooperated with law enforcement at the time of his arrest because "[he] knew [his] rights."

Furthermore, even assuming, *arguendo,* that the trial court erred in failing to suppress defendant's statements, such error is harmless beyond a reasonable doubt in this case. Defendant contends that without the challenged statements, the jury would have been left with a reasonable doubt as to the elements of premeditation and deliberation necessary for a first-degree murder conviction. To the contrary, however, the State presented overwhelming evidence of defendant's premeditation and deliberation, notwithstanding defendant's statements to police.

To sustain a conviction for first-degree murder,

> the State must prove beyond a reasonable doubt that the defendant formed a specific intent to kill after premeditation and deliberation. Premeditation means that the defendant thought about killing the victim for some period of time, however short, before the killing. Deliberation means the execution of an intent to kill in a cool state of blood without legal provocation and in furtherance of a fixed design; it does not require reflection for any appreciable length of time.

*State v. Bray,* 321 N.C. 663, 671, 365 S.E.2d 571, 576 (1988). "Premeditation and deliberation 'are usually proven by circumstantial evidence because they are mental processes that are not readily susceptible to proof by direct evidence.' " *State v. Dennison,* 171 N.C.

App. 504, 509, 615 S.E.2d 404, 407 (2005) (quoting *State v. Sierra*, 335 N.C. 753, 758, 440 S.E.2d 791, 794 (1994)).

> Among the circumstances from which premeditation and deliberation may properly be inferred in a prosecution for first-degree murder are:

> > "(1) lack of provocation on the part of the deceased, (2) the conduct and statements of the defendant before and after the killing, (3) threats and declarations of the defendant before and during the occurrence giving rise to the death of the deceased, (4) ill-will or previous difficulty between the parties, (5) the dealing of lethal blows after the deceased has been felled and rendered helpless, (6) evidence that the killing was done in a brutal manner, and (7) the nature and number of the victim's wounds."

*Id.* at 509, 615 S.E.2d at 407-08 (quoting *State v. Vause*, 328 N.C. 231, 238, 400 S.E.2d 57, 62 (1991)).

Here, even had the trial court excluded the statements made by defendant to Detective Davis following his arrest, multiple witnesses testified that defendant chased Hart outside the house and through the neighborhood with a paring knife; stabbed her repeatedly, thirty-five of which were wounds to her face and one of which penetrated her eyeball; knocked her down on the ground where he continued to stab her repeatedly; told a neighbor who witnessed the event that he "had to kill that b---h;" and stated voluntarily to officers after the assault that he had "killed a woman" and that he had cut his hand when he was "cutting that b----." The overwhelming evidence indicates defendant's ill-will towards Hart at the time of the assault and establishes that he continued to stab her repeatedly and in a brutal manner, even after she had fallen and was rendered helpless. Moreover, defendant called two expert witnesses to testify, both of which testified that defendant had given them an account of the incident consistent with the statements he made to police. Thus, even if the trial court had excluded defendant's statements to Detective Davis for deficiencies in his *Miranda* warnings, any such error was harmless beyond a reasonable doubt under the facts of this case.

## IV. Conclusion

Given the evidence presented to the trial court indicating a significant possibility that defendant may have been incompetent to proceed with trial, the trial court abused its discretion in denying

defendant's motion to continue the proceedings until defendant's competency to stand trial could be evaluated and determined. Nonetheless, given the testimony by Dr. Corvin during the course of defendant's trial, we hold the trial court's error is harmless under the particular facts of this case. In addition, we hold the trial court did not err in denying defendant's motion to suppress both his hand-written statement, and the incriminating statements he made to Detective Davis during interrogation, as they were made after defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. Thus, defendant received a fair trial free from prejudicial error.

No prejudicial error.

Judges CALABRIA and STEELMAN concur.